# EXHIBIT A

# Complaint for Permanent Injunction and Declaratory Relief

# (Feb. 17, 2026)

# EXHIBIT A

| | |
|---|---|
| 1 | AARON D. FORD |
|   |   Attorney General |
| 2 | Jessica E. Whelan (Bar No. 14781) |
|   |   Chief Deputy Solicitor General—Litigation |
| 3 | John S. Michela (Bar No. 8189) |
|   |   Senior Deputy Attorney General |
| 4 | Sabrena K. Clinton (Bar No. 6499) |
|   |   Senior Deputy Attorney General |
| 5 | State of Nevada |
|   | Office of the Attorney General |
| 6 | 1 State of Nevada Way, Suite 100 |
|   | Las Vegas, NV 89119 |
| 7 | (702) 486-3420 (phone) |
|   | (702) 486-3773 (fax) |
| 8 | jwhelan@ag.nv.gov |
|   | jmichela@ag.nv.gov |
| 9 | sclinton@ag.nv.gov |

REC'D & FILED

2026 FEB 17 PM 12: 27

_____ OTT HOEN
        CLERK

BY _____ DEPUTY

*Attorneys for Plaintiff*

**IN THE FIRST JUDICIAL DISTRICT COURT OF
THE STATE OF NEVADA IN AND FOR CARSON CITY**

STATE OF NEVADA ex rel. NEVADA
GAMING CONTROL BOARD,

    Plaintiff,

vs.

KALSHIEX, LLC,

    Defendant,

Case No.: 26OC00050 1B

Dept. No.: I

**COMPLAINT FOR PERMANENT
INJUNCTION AND DECLARATORY
RELIEF**

    COMES NOW, Plaintiff, STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD, by and through its attorneys, files this Complaint for KALSHIEX, LLC's violations of State of Nevada gaming laws and hereby asserts and alleges as follows:

### PARTIES

    1.    At all times relevant hereto, STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD ("BOARD") was and is a political subdivision of the State of Nevada established pursuant to NRS 463.030. The BOARD is charged with the responsibility of strictly regulating gaming in the State of Nevada because gaming is vitally important to the State, its economy, and the general welfare of its inhabitants.

2. At all times relevant hereto, KALSHIEX, LLC ("KALSHI") was and is a financial services company with its principal place of business in New York. KALSHI operates a derivatives exchange and prediction market ("market") where it offers products referred to as event contracts for sale. These products are offered for sale on KALSHI's website and mobile app and are made available to persons located in Nevada.

## GENERAL ALLEGATIONS

**A.   Nevada has a strong interest in regulating gaming in Nevada.**

3. The State of Nevada has a long history of gambling regulation and is the leader in gambling regulation in the United States.

4. In 1931, the Nevada Legislature legalized gambling in the State.

5. The Nevada Gaming Control Act of 1949 shifted gaming licensing from local government to state government.

6. With the passage of the Nevada Gaming Control Act, Nevada became the first State in the Nation to legalize sports betting.

7. "It is established beyond question that gaming is a matter of privilege conferred by the State rather than a matter of right." *State v. Rosenthal*, 93 Nev. 36, 40, 559 P.2d 830, 833 (1977).

8. Nevada's public policy, as expressed by the Legislature, is that "[t]he gaming industry is vitally important to the economy of the State and the general welfare of the inhabitants" and that "[a]ll establishments where gaming is conducted . . . must therefore be licensed, controlled and assisted to protect the public health, safety, morals, good order and general welfare of the inhabitants of the State, to foster the stability and success of gaming and to preserve the competitive economy and policies of free competition of the State of Nevada." NRS 463.0129(1)(a)-(d).

9. The Legislature has conclusively determined that "[p]ublic confidence and trust can only be maintained by strict regulation of all persons, locations, practices, associations and activities related to the operation of licensed gaming establishments," NRS 463.0129(1)(c), and that any activity that reflects "discredit upon the State of Nevada or the gaming industry" may be deemed an unsuitable method of operation by the BOARD and the Nevada Gaming Commission ("COMMISSION"), Nev. Gaming Comm'n Reg. 5.011(1).

10. Currently, the State of Nevada has a two-tiered regulatory structure to regulate gaming within the State involving the BOARD and COMMISSION.

11. Nevada law requires that all gaming activity be strictly regulated and licensed as the gaming industry is "vitally important to the economy of the State and the general welfare of the inhabitants." NRS 463.0129(1)(a).

12. Pursuant to Nevada law, the continued growth and success of gaming in the State of Nevada is "dependent upon public confidence and trust that licensed gaming" is "conducted honestly and competitively." NRS 463.0129(1)(b).

13. Pursuant to Nevada law, "[p]ublic confidence and trust can only be maintained by <u>strict</u> regulation of all persons, locations, practices, associates, and activities related" to the operation of gaming in Nevada. NRS 463.0129(1)(c) (emphasis added).

14. Pursuant to Nevada law, all entities making gaming available in Nevada must "be licensed, controlled and assisted to protect the public health, safety, morals, good order and general welfare of the inhabitants of the State." NRS 463.0129(1)(d).

15. Lack of enforcement of Nevada gaming laws against entities that make gaming accessible to persons within the State will severely impact Nevada's ability to strictly regulate gaming in Nevada and foster Nevada's gaming industry, which is vitally important to its economy and its citizens.

**B.   KALSHI's market is a gambling game and/or sports pool, and accepts wagers in or from Nevada.**

16. "Gaming" in Nevada is synonymous with "gambling" and includes any regulated game. NRS 463.0153.

17. A "game" subject to regulation in Nevada includes "any game played with . . . equipment or any mechanical or electronic device or machine for money . . . or any representative of value" that is accessible in Nevada. NRS 463.0152.

18. KALSHI's products meet the requirements of NRS 463.0152 because a person accesses KALSHI's market through KALSHI's website, mobile app, and the use of the Internet and enters wagers through KALSHI's market with the payment of money. Moreover, KALSHI uses electronic devices such as computers and servers to make its wagers available on its website, its mobile app, and the Internet.

19. A game subject to regulation in Nevada includes a "sports pool." NRS 463.160. A "sports pool" is "the business of accepting wagers on sporting events or other events by any system or method of wagering." NRS 463.0193. A "wager" is "a sum of money or representative of value that is risked on an occurrence for which the outcome is uncertain." NRS 463.01962.

20. KALSHI's products meet the requirement of NRS 463.160 and NRS 463.0193 because KALSHI's market allows users to wager on the outcomes of sporting events and other events for which the outcome is uncertain. These sporting events and other events include, but are not limited to, college basketball games, college and professional football games, and elections. Event contracts on sports represent over 90% of KALSHI's trading volumes. Sam Learner, *Prediction Markets Barely Make Money; Sportsbooks Make Money*, Fin. Times (Dec. 19, 2025), perma.cc/CB9N-SN6P.

21. KALSHI's event contracts are wagers: A user spends a sum of money to buy an event contract on an outcome of an event, and receives a payout if the outcome occurs and not if the outcome does not occur. For example, on February 16, 2026, a user could buy an event contract for $0.17 that would pay out $1 if the University of Michigan wins the 2026 NCAA Division I men's college basketball championship. Kalshi, *Men's College Basketball Champion*, https://perma.cc/J24E-BZ73.

22. Kalshi has acknowledged that its products are sports betting. It has advertised its products as "legal sports betting in all 50 states":



Page 4 of 11

**004**

Dustin Goucher, *Ten Times Kalshi Said People Could Bet On Things*, Event Horizon (Apr. 3, 2025), perma.cc/DT9Y-6C7B.

23. A "game" subject to regulation in Nevada includes a "percentage game." NRS 463.1052. A "percentage game" exists where the "house" does not directly participate in a wager and its only stake is a commission derived from wagers. *See Hughes Props. v. State*, 100 Nev. 295, 297, 680 P.2d 970, 971 (1984).

24. KALSHI's products meet this requirement because KALSHI takes a commission, or percentage, on the wagers placed through its market. KALSHI takes a percentage of money wagered through its market in the form of commissions styled as "trading fees." KALSHI, *Kalshi Fee Schedule*, perma.cc/BZ3L-MYM5.

25. In taking a percentage of the wagers placed through its market, KALSHI accepts wagers on sporting events and other events.

**C.    KALSHI's offerings that are available in Nevada cause harm to Nevada.**

26. Despite making wagers, sports betting, and other gaming activity ("gaming") accessible in the State of Nevada, KALSHI is not licensed in Nevada and does not comply with Nevada gaming law.

27. Nevada law requires every entity that makes gaming activities, including wagers, accessible in Nevada to be subject to a rigorous licensing process and an in-depth investigation of all entities and natural persons who directly or indirectly have an ownership interest in the entity offering the wagers.

28. KALSHI has not undergone Nevada's rigorous licensing process for its wagering activities.

29. Entities conducting gaming activities in the State of Nevada must pay taxes on gross gaming revenue derived from gaming activities accessible in the State.

30. KALSHI does not pay taxes on gross gaming revenue derived from gaming activities, including wagers accessible in the State of Nevada.

31. Entities accepting wagers from persons in the State of Nevada must have a physical location in Nevada.

32. KALSHI does not have a physical location in Nevada for its wagering activity.

33. Entities accepting wagers in the State of Nevada on sporting events may not allow persons under 21 years of age to place wagers.

34. KALSHI allows persons under the age of 21 years of age to place wagers on its market. Specifically, it allows anyone over the age of 18 to create an account and trade on its platform. KALSHI, *Signing Up as an Individual*, perma.cc/K7D8-GA8X.

35. Entities accepting wagers in the State of Nevada on sporting events must employ safeguards to ensure that wagers are not being placed on an event by owners, coaches, players, or officials participating in the event, and must communicate with Nevada gaming regulatory authorities about potential evidence of match fixing or point shaving.

36. On information and belief, KALSHI does not employ adequate safeguards to ensure that wagers are not being placed on an event from owners, coaches, players, or officials participating in the event, and does not communicate about potential evidence of match fixing or point shaving with Nevada gaming regulatory authorities. To the contrary, its own chief executive officer recently said that insider trading on its platform is "fair game" and simply "part of the risk in the market." CNBC, *Kalshi CEO Tarek Mansour on Super Bowl Trades*, at 10:13-16 (Feb. 10, 2026), bit.ly/4aISwfh.

**D.   KALSHI's market violates NRS 463.160.**

37. Pursuant to NRS 463.160, it is unlawful for a person to expose a game or a sports pool for play in Nevada without the required gaming licenses.

38. KALSHI's market exposes a percentage game for play in Nevada.

39. KALSHI's market exposes a sports pool for play in Nevada.

40. KALSHI does not possess a Nevada gaming license.

41. KALSHI does not possess a Nevada sports pool approval.

42. KALSHI, in making its market available to persons located in Nevada, has violated, and continues to violate, NRS 463.160.

**E.   KALSHI's market violates NRS 463.350.**

43. Pursuant to NRS 463.350, a person under the age of 21 may not play, be allowed to play, place wagers at, or collect winnings from any game or sports pool.

44. KALSHI's market does not restrict persons under the age of 21 from participating in its market.

45. KALSHI's market constitutes a percentage game and/or sports pool.

46. KALSHI, in making its market available to persons located in Nevada who are under the age of 21, has violated, and continues to violate, NRS 463.350.

**F.     KALSHI's market violates NRS 465.086.**

47. Pursuant to NRS 465.086(1), it is unlawful for any person to directly or indirectly receive any compensation or any percentage or share of the money played for accepting or facilitating any wager upon the result of any sporting event without a gaming license.

48. KALSHI is not licensed to accept wagers.

49. KALSHI's market accepts wagers.

50. In addition to accepting wagers on the results of sporting events and other events, KALSHI's market facilitates wagers on sporting events and other events between individual participants in its market.

51. As set out above, these wagers are on sporting events and other events, including elections.

52. KALSHI takes a percentage of money wagered through its market in the form of commissions.

53. KALSHI, in making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada is a person directly or indirectly receiving compensation or a percentage or share of the money played for accepting or facilitating wagers on the results of sporting events and other events without a gaming license. As a result, it has violated, and continues to violate, NRS 465.086.

**G.     KALSHI's market violates NRS 465.092.**

54. Pursuant to NRS 465.092, it is unlawful for a person to knowingly accept a wager from a person inside of Nevada through a medium of communication unless the person accepting the wager is licensed pursuant to Nevada law and otherwise complies with applicable Nevada laws and regulations concerning wagering.

55. KALSHI's market accepts wagers on sporting events and other events.

56. KALSHI's market accepts wagers from persons inside of Nevada.

57. The Internet is a medium of communication. NRS 465.091.

58. KALSHI's market uses the Internet for wagering activities.

59. KALSHI is not and has never been licensed to accept wagers in Nevada.

60. KALSHI, in making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada without a license to accept such wagers, is a person knowingly accepting wagers from persons inside of Nevada through a medium of communication and has violated, and continues to violate, NRS 465.092.

61. The BOARD sent KALSHI a cease-and-desist letter on or about March 4, 2025, notifying KALSHI that it could not accept wagers from a person inside of Nevada without a gaming license. KALSHI refused to comply. Instead, on or about March 28, 2025, KALSHI filed suit in federal court, seeking a preliminary injunction enjoining the State of Nevada from enforcing state law. On or about April 9, 2025, the United States District Court for the District of Nevada entered a preliminary injunction enjoining the BOARD and COMMISSION from enforcing state gaming law against KALSHI. On or about November 25, 2025, the same court dissolved the preliminary injunction. No court order prevents the BOARD from exercising its enforcement power against Kalshi or any other entity that violates Nevada law.

## FIRST CLAIM FOR RELIEF

### (Declaratory and Injunctive Relief - NRS 463.343 and 463.346)

62. The BOARD repeats, realleges, and incorporates each and every paragraph contained in the General Allegations above as though fully set forth herein.

63. Pursuant to NRS 463.343, the BOARD may bring an action for declaratory judgment in this Court to obtain "a judicial determination of any question of construction or validity arising under" NRS chapter 463. NRS 463.343(1).

64. Pursuant to NRS 463.346, the BOARD may institute a civil action in this Court "to restrain a violation" of NRS chapters 463 and 465. NRS 463.346(1).

65. The Court "shall give priority over other civil actions to an action brought pursuant to" NRS 463.346. NRS 463.345.

66. A justiciable controversy exists as to the application of NRS 463.160 and 463.350 to the activities of KALSHI as they relate to the State of Nevada.

67. The BOARD's and KALSHI's interests are adverse.

68. The BOARD has a strong legal interest in this controversy as it directly impacts the BOARD's ability to carry out its legislative charge to strictly regulate gaming because it is vitally important to Nevada, its economy, and the general welfare of its inhabitants.

69. The issue involved in this controversy is ripe for judicial determination.

70. The Court is required to construe all statutes at issue in this claim for relief in a manner consistent with the declared public policy of Nevada. NRS 463.343(3).

71. The BOARD is entitled to a declaration from this Court that NRS 463.160 prohibits KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada without obtaining the required gaming licenses.

72. The BOARD is entitled to a declaration from this Court that NRS 463.350 prohibits KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market to persons under the age of 21 in Nevada.

73. The BOARD is entitled to an injunction enjoining KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada unless and until KALSHI obtains the appropriate gaming licenses.

74. The BOARD is entitled to an injunction enjoining KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market to persons under the age of 21 in Nevada.

## SECOND CLAIM FOR RELIEF

**(Declaratory and Injunctive Relief - NRS 30.030)**

75. The BOARD repeats, realleges, and incorporates each and every paragraph contained in the General Allegations above as though fully set forth herein.

76. Pursuant to NRS 30.030, this Court has the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed." NRS 30.030. The declaration "may be

1  either affirmative or negative in form and effect" and "shall have the force and effect of a final judgment or decree." *Id.*

77. A justiciable controversy exists as to the application of NRS 465.086 and 465.092 to the activities of KALSHI as they relate to Nevada.

78. The BOARD's and KALSHI's interests are adverse.

79. The BOARD has a strong legal interest in this controversy as it directly impacts the BOARD's ability to carry out its legislative charge to strictly regulate gaming because it is vitally important to Nevada, its economy, and the general welfare of its inhabitants.

80. The issue involved in this controversy is ripe for judicial determination.

81. The BOARD is entitled to a declaration from this Court that NRS 465.086 and 465.092 prohibit KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada without obtaining the required gaming licenses.

82. The BOARD is entitled to an injunction enjoining KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada unless and until KALSHI obtains the appropriate gaming licenses.

## PRAYER FOR RELIEF

WHEREFORE, the BOARD prays for judgment against KALSHI as follows:

1. For a declaration that NRS 463.160, 465.086, and 465.092 prohibit KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada without obtaining the required gaming licenses;

2. For a declaration that NRS 463.350 prohibits KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market to persons under the age of 21 in Nevada;

3. For an injunction enjoining KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada unless and until KALSHI obtains the appropriate gaming licenses;

///
///

4. For an injunction enjoining KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market to persons under the age of 21 in Nevada;

5. For reasonable attorneys' fees and costs of suit incurred herein; and

6. For such other and further relief as the Court deems just and proper.

**AFFIRMATION**
**(Pursuant to NRS 239B.030)**

The undersigned does hereby affirm that the foregoing document does not contain the social security number of any person.

AARON D. FORD
Attorney General

By: _____
Jessica E. Whelan (Bar No. 14781)
Chief Deputy Solicitor General—Litigation
John S. Michela (Bar No. 8189)
Senior Deputy Attorney General
Sabrena K. Clinton (Bar No. 6499)
Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
jwhelan@ag.nv.gov
jmichela@ag.nv.gov
sclinton@ag.nv.gov

*Attorneys for Plaintiff*