AARON D. FORD
  Attorney General
Jessica E. Whelan (Bar No. 14781)
  Chief Deputy Solicitor General – Litigation
Sabrena K. Clinton (Bar No. 6499)
  Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br><br>Plaintiff,<br><br>vs.<br><br>KALSHIEX, LLC<br><br>Defendant, | Case No. 2:26-cv-00406-APG-MDC<br><br>(Nev. Dist. Ct. No. 26 0C 00012 1B)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND (ECF NO. 10)** |

## I.  INTRODUCTION

The Nevada Gaming Control Board brought this state-law civil enforcement action against Kalshi for offering unlicensed sports betting in violation of Nevada's gaming laws. Kalshi argues it does not have to comply with those laws because (in its view) the federal Commodity Exchange Act (CEA) preempts state gaming law. But that is a preemption defense, and as Kalshi acknowledges, a preemption defense is not a basis for removal. Kalshi makes three arguments for why this case nonetheless belongs in federal court, but Kalshi's arguments lack merit.

First, Kalshi argues that Nevada's state-law complaint necessarily presents the federal question whether its actions are authorized under the CEA. But as the Board explained, federal law appears *nowhere* on the face of the complaint, and the state court is not required to decide any federal question to decide the state cause of action. Kalshi attempts to avoid that straightforward outcome by arguing that two Nevada gaming statutes incorporate federal law. Those statutes do not incorporate federal law, and

even if they did, federal law only would provide an affirmative defense—and it is settled law that a federal affirmative defense does not create federal question jurisdiction. Accepting Kalshi's position would massively expand the scope of federal court jurisdiction. Kalshi can raise its federal defense in state court (as two of its competitors already have). State courts have the ability and responsibility to decide federal claims. And, most critically, state courts have a special sovereign interest in adjudicating claims involving their own State's laws.

Second, Kalshi argues that the doctrine of complete preemption converts the Board's state-law claims into federal claims under the CEA. As Kalshi acknowledges, no court *ever* has accepted that view of the CEA; indeed, the District of Massachusetts rejected Kalshi's argument just last year. Neither of the requirements for complete preemption is met. To start, as Chief Judge Gordon found, the CEA likely does not preempt the application of state gaming law to Kalshi's contracts. And even if it did, the CEA does not provide a cause of action to vindicate the State's interests in gaming regulation and remedy the harms from unlicensed and unregulated gaming. There just is not a clear congressional intent to take away all state court jurisdiction here.

Third, Kalshi argues that the CFTC is a necessary party for one of the Board's causes of action under state law. But the CFTC does not have the type of legal interest in that claim that would require joinder under state law. The Board seeks only to enforce Nevada gaming law. It does not seek to limit or restrict the CFTC's authority over Kalshi in any way. Nor does it even seek to stop Kalshi's operations—as the Board has repeatedly explained, Kalshi could offer its wagers in Nevada if it complied with Nevada gaming law. Kalshi just does not want to do that because it thinks the CEA allows it to ignore state law. That is a preemption defense—no more, no less.

Kalshi makes a variety of other arguments, about how it believes that the Board has not acted quickly enough to enforce state law and how it believes the Board is seeking relief that is too broad. But none of those arguments matters to the remand issues. The state court can determine whether the Board's harms justify preliminary injunctive relief and can tailor the scope of that relief to address only unlawful gaming activities and not interfere with bona fide commodity derivative trading. The Court should remand this case to the state court and award the Board fees and costs incurred responding to Kalshi's removal of this case.

I.  **ARGUMENT**

A.  **The Board's State-Law Claims Do Not Support Federal-Question Jurisdiction**

Kalshi fails to establish that this case "aris[es] under" federal law to satisfy 28 U.S.C. § 1331. The Board's complaint raises only state-law claims, and this is not one of the "rare" cases in which a complaint asserting only state-law claims "necessarily raise[s]" a "substantial" and "actually disputed" federal issue. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Kalshi has admitted that its argument about the CEA is a federal preemption defense, *see* Mot. 14, and it is black-letter law that a federal defense does not create "arising under" jurisdiction, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Kalshi argues (Opp. 8–10) that two state statutes, NRS §§ 463.160 and 465.086(1), necessarily incorporate federal law, but that is incorrect.

First, Kalshi notes (Opp. 8) that both statutes make it unlawful for a person to conduct certain gaming activities in Nevada "without having first procured . . . all federal, state, county and municipal gaming licenses" that may be required. NRS §§ 463.160(1), 465.086(1). In Kalshi's view, this means that to prove a violation of either statute, the Board must prove that Kalshi does not have the necessary "federal . . . gaming license." That is wrong. The different license requirements are cumulative (the statutes use "and" not "or")—meaning that the Board can prove a violation *either* by showing that Kalshi lacks a "federal . . . gaming license" (whatever that may be) *or* by showing that Kalshi lacks a "state . . . gaming license." *Id.* The Board's complaint contends solely that Kalshi lacks a state gaming license (which Kalshi does not deny). *See* ECF No. 8-1, ¶ 26. The Board does not allege that Kalshi lacks a federal license (although registration with the CFTC is not a "gaming license"). The Board thus can prevail on its *prima facie* case without once referring to federal law. Under Kalshi's contrary view, *any* state enforcement action against any gaming operator always would be removable to federal court because the Board would always need to prove the lack of a federal license.

Kalshi's argument (Opp. 8) is that its possession of a federal registration obviates the need for it to obtain a state gaming license. But that is a federal preemption defense to the "state . . . gaming license" requirement that Kalshi must plead and prove, not an element of the Board's claim. Nothing requires *the Board* to prove that Kalshi lacks a "federal . . . gaming license"; that requirement is irrelevant to the

/ / /

Board's claims. As Kalshi admits (Opp. 9), a preemption defense is not a basis for removal, "even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

Kalshi relies (Opp. 8) on a federal district court case from Georgia, *Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026). That case also involved a state-law claim against a prediction market. But the state law at issue there is nothing like the Nevada law at issue here. The Georgia law in *Georgia Gambling* provided that "[g]ambling contracts" were "void," and authorized recovery of "[m]oney paid . . . upon a gambling consideration" in connection with such contracts, O.C.G.A. § 13-8-3, and the Georgia Supreme Court had stated that whether a gambling contract was void under this provision "depends on whether the contract is unlawful under the law governing its validity," *Georgia Gambling*, 2026 WL 279375, at *3 (citing *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)). As a result, to succeed on its state-law claim, the plaintiff had to prove that the challenged contracts were illegal under federal law. *See id.* at *2–3. Kalshi can identify no similar incorporation of federal law into the elements of the Board's state-law claims here. The Board explained all this (Mot. 17), and Kalshi has no response.

Second, Kalshi notes (Opp. 9) that NRS § 465.086(1) states that its prohibitions on unlawful gaming conduct apply "[e]xcept as otherwise provided by law." Kalshi contends (Opp. 9) that this means NRS § 465.086(1) necessarily incorporates federal law. But the clause does not expressly refer to any federal law, much less the CEA specifically. Kalshi does not dispute that; instead, its argument presupposes that it is right about preemption and that the CEA applies here. But when a statute refers to "law" generally, the statue is presumed to refer "only . . . to the laws of the government" that passed the statute, *Houston v. Moore*, 18 U.S. (5. Wheat.) 1, 42 (1820)—here, meaning Nevada law. Accordingly, Nevada law does not require the Board to show noncompliance with the CEA in order to establish a violation of NRS § 465.086. That distinguishes this case from *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (cited at Opp. 7), where the plaintiff expressly incorporated federal law into the cause of action; the state law in that case required the plaintiff to specify

/ / /

/ / /

/ / /

"the facts establishing the superiority of [its] claim," and the plaintiff had premised superiority "on a failure by the IRS to give it adequate notice, as defined by federal law." *Id.* at 314–15.[1]

Further, as the Board explained (Mot. 17), even if the "[e]xcept as otherwise provided" language were understood to incorporate federal law, that would only establish an affirmative defense to be raised and proved by the defendant, not an element of a statutory claim that could serve as a basis for removal. Kalshi argues that this would not be an affirmative defense because a statute creates affirmative defenses "only when the statute lists them in a separate section from the statutory prohibitions and the exemptions 'expressly refer to the prohibited conduct as such.'" Opp. 9 (quoting *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025)). Kalshi misreads *Cunningham*: The Supreme Court did not say that *only* statutes that list exceptions separately and label them as exceptions create affirmative defenses. Instead, the Court explained that the "general rule of statutory construction" is that "a special exception to the prohibitions of a statute" is an affirmative defense. 604 U.S. at 701 (internal quotation marks omitted). The Nevada Supreme Court likewise has explained that an exception to a prohibition generally is an affirmative defense, as opposed to an element of a cause of action. *See Haddad v. State*, 2011 WL 1225795, at *2 (Nev. Jan. 13, 2011) ("[A] statutory exception is an affirmative defense where the statute first defines an offense in unconditional terms and then specifies an exception to its operation.").[2] Here, "except as otherwise provided" sets out an exception to the statutory prohibition and thus creates an affirmative defense.

Citing *United States v. Vuitch*, 402 U.S. 62 (1971), Kalshi argues (Opp. 10) that an exception is not an affirmative defense when it is part of the same "provision" of a statute. But the statute in *Vuitch* set out the specific requirements for the exception within the statute itself: It prohibited any person from "procur[ing] . . . an abortion or miscarriage on any woman, *unless the same were done as necessary for*

---

[1] Kalshi argues (Opp. 9) that the Nevada Supreme Court interpreted "[e]xcept as otherwise provided by law" in the federal Telephone Consumer Protection Act (TCPA) to incorporate state statutes of limitations when a TCPA suit is brought in state court. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 327 (2006). Kalshi misreads *Edwards*; the Nevada Supreme Court concluded that a *separate* provision of the TCPA, which authorizes suits in state courts "if otherwise permitted by the laws or rules of court of State," 47 U.S.C. § 227(b)(3), incorporated the relevant Nevada statute of limitations, *see* 122 Nev. at 327.

[2] Kalshi does not identify any Nevada case rejecting this principle. Instead, it cites (Opp. 9) *Harmon v. Tanner Motor Tours of Nevada, Ltd.*, 79 Nev. 4 (1963), where the Nevada Supreme Court came to the unremarkable conclusion that, when two statutes are in conflict and one says "[e]xcept as otherwise provided," that statute should give way to the other one. *See id.* at 11–12.

*the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine.*" 402 U.S. at 68–69 (emphasis added; internal quotation marks omitted). The statute did not merely refer to other unspecified laws in other statutes, as NRS § 465.086 does.

As the Ninth Circuit has explained, *Vuitch* is an example of a situation in which an exception forms part of the cause of action because the exception "is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted." *United States v. Carey*, 929 F.3d 1092, 1100 (9th Cir. 2019) (quoting *United States v. Cook*, 84 U.S. (17 Wall.) 168, 173 (1872)). Where, by contrast, a statute "broadly prohibits a set of activities" which clearly describe the offense, "and then offers a limited exception," the exception is an affirmative defense. *Id.* at 1100. That latter situation describes NRS § 465.086: The statute broadly prohibits an unlicensed entity from receiving any compensation for accepting a wager on a sporting event and then provides a limited exception for when that conduct is allowed by other law. *See* NRS § 465.086. That is, the statutory prohibition can be "accurately and clearly described," *Cook*, 84 U.S. at 173, without reference to the "[e]xcept as otherwise provided" clause, NRS § 465.086. That language thus only provides an affirmative defense.

Finally, as the Board explained (Mot. 17–18), accepting Kalshi's view of federal question jurisdiction would offend principles of federalism and would dramatically expand federal question jurisdiction. As the Ninth Circuit has explained, a federal court should be particularly reluctant to adjudicate a state-law enforcement action brought by the State to protect the State's residents in light of the State's "strong sovereign interest in enforcing its state laws," *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)—which is exactly the situation here.

Kalshi's response (Opp. 10–12) is to argue that the uniform application of the CEA is a federal-law issue, not a state-law issue. But the Board's suit seeks to enforce Nevada's state gambling regulations, not to enforce the CEA or otherwise regulate DCMs. There is *no* federal tradition of gaming regulation; on the contrary, federal law "defer[s] to, and even promote[s], differing gambling policies in different States." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 187 (1999). Exercising jurisdiction over state-law claims in an area of core state regulation merely because of a federal preemption defense "would 'herald[] a potentially enormous shift of traditionally state cases into federal

courts.'" *Nevada*, 672 F.3d at 676. It would allow any DCM (or any other federally regulated entity) to remove any state-court case to federal court on the basis of a preemption defense, thus dramatically expanding the scope of federal jurisdiction.

**B.     The CEA Does Not Give Rise to Complete Preemption**

Kalshi also fails to establish that this case belongs in federal court under the doctrine of complete preemption. Complete preemption is an exceedingly rare doctrine where federal law not only displaces state law, but also takes away all power from state courts to decide claims that touch on that area. *City of Oakland v. BP PLC*, 969 F.3d 895, 906–08 (9th Cir. 2020). Two requirements must be met: (1) the federal statute must show an intent to "preempt every state law cause of action within the scope" of the statute, and (2) the statute must provide a "substitute cause of action" which would allow the plaintiff to "remedy the wrong" it asserts. *Id.* (internal quotation marks omitted). In those circumstances, the federal statute completely displaces all state-law claims, converting them into federal claims under the statute. *Id.* This form of jurisdictional preemption is so "extraordinar[ily]" potent that the Supreme Court has only ever found three federal statutes to possess it. *Id.* Although lower federal courts have held that a smattering of other statutes have complete preemptive force, *none* has held that the CEA does. Indeed, the only two courts that have considered the question have rejected Kalshi's argument. *See* Order, *Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (ECF No. 34); *Farmers Co-op Elevator v. Doden*, 946 F. Supp. 718, 728–29 & n.4 (N.D. Iowa 1996). The Court should as well.

**C.     Congress Did Not Intend to Displace State Gaming Law**

To start, Kalshi argues (Opp. 13–17) that Congress intended for the CEA to "displace" all state authority to "regulate trading on DCMs." Chief Judge Gordon already has rejected that argument. *See KalshiEX LLC v. Hendrick*, 2025 WL 3286282, at *3 (D. Nev. Nov. 24, 2025), *appeal pending* No. 25-7516 (9th Cir. filed Nov. 25, 2025). And even if Kalshi were correct, that would only establish preemption, not the complete preemption required for removal.

The CEA provides the CFTC with "exclusive jurisdiction" over certain types of financial instruments (including, as relevant here, "option[s]," "swaps," and "contracts of sale of a commodity for future delivery" (*i.e.*, futures)) that are "traded on a [DCM] or any other board, exchange, or market." 7 U.S.C. § 2(a)(1)(A). That is, the CFTC has "exclusive jurisdiction" (whatever that may mean) only when

a contract is *both* one of the listed commodity derivatives *and* is traded on a DCM or any other market. Merely being traded on a DCM is not sufficient—if a contract is not "swap" or other commodity derivative in the first place, it "do[es] not fall within the CFTC's exclusive jurisdiction." *Hendrick*, 2025 WL 3286282, at *3.

      As Chief Judge Gordon found, Kalshi's sports and election event contracts likely are *not* one of the listed commodity derivatives set out in CEA. They are gambling wagers (bets on the outcomes of sports and other events), and gambling wagers are not swaps, options, or futures under the CEA. *Hendrick*, 2025 WL 3286282, at *6–12. Chief Judge Gordon explained that to be a "swap," a contract must be based on events that are "inherently joined or connected with a potential financial, economic, or commercial consequence . . . without looking at externalities like potential downstream financial consequences such as parties extrinsic to the event betting on it." *Id.* at *6. This ensures that commodity derivatives are restricted to the type of financial instruments that businesses traditionally have used to hedge risk, and do not extend to "consumer transactions that have not historically been known to be swaps, such as sports wagers." *Id.* As Judge Gordon explained, under Kalshi's view, *all* sports wagers would be swaps, and because the CEA requires all consumer swaps to be traded on DCMs, that would make the CFTC the Nation's sole regulator for sports betting. *Id.* at *9. Nothing in the CEA shows that Congress had that intent; notably, the CEA contains *no* provisions for the regulation of gambling. *Id.* Congress did not intend for DCMs to be "nationwide gambling venues on every topic under the sun to the exclusion of state regulation and with no comparable federal regulator." *Id.* Kalshi's contracts thus are not swaps or other commodity derivatives, and so its preemption argument fails at the outset. Remarkably, Kalshi does not address Chief Judge Gordon's decision at all, even though it forecloses its preemption argument—if the CEA does not displace state gaming law with respect to Kalshi's contracts under ordinary preemption principles, the CEA cannot meet the even higher bar for complete preemption.

      But even if Kalshi's contracts were swaps, the CEA would not completely preempt application of state gaming law to those contracts. *See KalshiEX v. Martin*, 793 F. Supp. 3d 667, 676-84 (D. Md. 2025), *appeal pending*, No. 25-1892 (4th Cir. Aug. 6, 2025). In particular, the CEA contains a savings clause that expressly preserves the authority of state courts, *see* 7 U.S.C. § 2(a)(1)(A)—and unlike the separate savings clause that preserves the authority of state regulators, which is limited by the grant of

"exclusive jurisdiction" to the CFTC, there are no limits to the state-court savings clause, *see id.* As the Board explained (Mot. 20), this savings clause is fatal to the claim of complete preemption; if a federal statue is completely preemptive, there would be no state-court authority to save. *See In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1058 (9th Cir. 2007) ("A savings clause is fundamentally incompatible with complete field preemption."). Kalshi has no response; indeed, it entirely fails to address this savings clause.

### D. No Cause of Action Under the CEA Addresses Unlicensed Gaming

Even if the CEA preempted state gaming law, it would have complete jurisdictional preemptive effect only if it also provided a cause of action that would provide a remedy for the Board's claimed harms. *City of Oakland*, 969 F.3d at 908. There is no such cause of action here: The CEA does not regulate gaming, so it provides no cause of action to address the harms caused by unlicensed and unregulated gaming, such as harm to consumers (including minors and those suffering from problem gaming), disruption of the regulated gaming industry, and loss of tax revenue. *See Hendrick*, 2025 WL 3286282, at *13–14. Kalshi's responses lack merit.

As a general matter, Kalshi argues (Opp. 17–18) that the federal statute does not have to provide the same scope of relief as state law. But while the federal scheme may be less protective than the state scheme, it still must provide a cause of action to address the same *types* of harms. *See City of Oakland*, 969 F.3d at 908 (Clean Air Act does not completely preempt nuisance claims for climate change, because no cause of action under the Act addresses that harm). Here, nothing in the CEA addresses the harms of unlicensed and unregulated gaming at all, much less provides a cause of action for the Board to seek redress for those harms.

Kalshi identifies (Opp. 18) one provision in the CEA, 7 U.S.C. § 16(e)(1)(C), that it says provides a cause of action for failing to possess a federal license. But Section 16(e)(1)(C) does not create a federal cause of action—it says that the CEA does not preempt "the application of any Federal or State statute" when an entity that is supposed to register with the CFTC fails to do so. 7 U.S.C. § 16(e)(1)(C). So, if anything, this provision confirms that the Congress did not intend for the CEA to provide *all* relevant causes of action, since it expressly authorizes other causes of action outside the CEA. Further, the "federal license" that Kalshi refers to is registration with the CFTC to conduct commodity derivatives trading—

it is not a license to conduct gaming activities. The supposed federal license thus is not a substitute for a Nevada gaming license. Finally, this provision does not apply here under Kalshi's own argument. Kalshi argues that its contracts are "swaps," but Section 16(e)(1)(C) does not apply to swaps. *See* 7 U.S.C. § 2(d). Only some of the CEA's provisions apply to swaps, and Section 16(e)(1)(C) is not on the list even though other parts of Section 16 are. *See id.* ("Nothing in this chapter (other than . . . subsections (e)(2), (f), and (h) of section 16 of this title . . . ) governs or applies to a swap."). So even if Section 16(e)(1)(C) were relevant, it would not apply here.[3]

Next, Kalshi argues (Opp. 19) that the CEA's Special Rule, 7 U.S.C. § 7a-2(c)(5)(C)(i) provides a mechanism for determining whether its contracts constitute "gaming" under state law. But the Special Rule does not create a cause of action for *the Board.* The Special Rule allows the CFTC to order a DCM to delist a contract if it involves "gaming" (or "war," "terrorism," "assassination," or "any activity that is unlawful under any Federal or State law"). 7 U.S.C. § 7a-2(c)(5)(C)(i). The Board has no ability to bring a claim under the Special Rule. Further, the Special Rule merely permits the CFTC to order a contract delisted if it involves gaming, regardless of whether that gaming is lawful under State law. It is not a tool to regulate lawful gaming—that is, to ensure that gaming is conducted in accordance with state requirements.

Finally, Kalshi argues (Opp. 19) that the Board could petition the CFTC to amend its regulations to prohibit sports contracts. But the CFTC already has done that—17 C.F.R. § 40.11(a) prohibits DCMs from listing contracts that "that involves, relates to, or references . . . gaming." 17 C.F.R. § 40.11(a). Kalshi just ignores that regulation. More fundamentally, Kalshi misunderstands the Board's complaint—the Board's complaint is not that the CFTC permits sports event contracts; the Board's complaint is that Kalshi offers those contracts without following Nevada law. If Kalshi complied with Nevada law, the Board would have no problem with it offering sports contracts on its DCM, because the Board does not enforce the CEA or the CFTC's regulations. The only reason why the CEA is at all relevant to this case

/ / /

---

[3] Kalshi also cites (Opp. 18) Section 13a-1, but that provision by its terms only permits *the CFTC* to bring suit to enforce the CEA. *See* 7 U.S.C. § 13a-1(a). It does not provide a cause of action to the Board or any other state gaming regulator. And while the CEA separately provides a cause of action to States to sue to enforce the CEA, that provision does not authorize suits against DCMs like Kalshi. *See id.* § 13a-2(1).

is because *Kalshi* insists that the CEA excuses it from complying with Nevada law. That is a paradigmatic federal preemption defense, and a federal preemption defense is not a basis for federal court jurisdiction.

### E. The CFTC Is Not a Required Party Under Nevada Law

Kalshi also has not shown that the Board was required to join the CFTC as a party to its claim for declaratory relief under NRS §§ 30.030 and 30.130. As the Nevada Supreme Court has explained, a plaintiff bringing a claim for declaratory relief under this section must join only the parties that have a "legal" interest in the claim, meaning whose "rights, duties, or obligations" will be adjudicated in the claim—and not those who would be affected by the decision only in a "practical" sense. *Wells v. Bank of Nevada*, 90 Nev. 192, 197–98 (1974). Here, a determination that Kalshi needs a gaming license under state law would not affect the rights, duties, or obligations of the CFTC. The CFTC, at most, has a practical interest in the success of Kalshi's preemption defense—if the defense is unsuccessful, then the CFTC might have to account for, and coordinate with, state gaming regulators when it comes to sports contracts on DCMs. But the Board's state enforcement action against Kalshi will not decide any interest of the CFTC as a legal matter. The Board is seeking to enforce state law against Kalshi, not the CFTC.

Kalshi argues (Opp. 20) that *Wells* is distinguishable because it involved different facts (an inheritance dispute). But *Wells* expressly set out the rule for which parties must be joined under NRS § 30.130 for a declaratory action under NRS § 30.030—the statute Kalshi invokes here. 90 Nev. at 197–98. *Wells* explained that when NRS § 30.130 states that "all persons" who "have or claim any interest" must be joined to the action, the statute means only those with a "legal" interest. *Id.* That Nevada Supreme Court decision on the meaning of a Nevada statute is binding law.

Kalshi cites (Opp. 20–21) only one other Nevada authority, and it supports the Board, not Kalshi. In *Turan Petroleum, Inc. ex rel. Bektayev Bd. v. Luberski, Inc.*, 128 Nev. 941 (2012) (unpub.), shareholders of a company sought a declaration that the board of directors had not been correctly elected and thus should not be seated. *Id.* at *1. The Nevada Supreme Court held that the board members should have been joined to the action, because the action would determine their legal right to control the company. *Id.* at *2. There is nothing like that here—no one disputes the CFTC's authority to regulate Kalshi's DCM under the CEA, and the Board does not seek to displace the CFTC or restrict its federal authority. The Board merely wants to apply Nevada gaming law.

      Kalshi also notes (Opp. 20) that the CFTC has filed an *amicus* brief in a related case in the Ninth Circuit, in which it expressed an "interest" in the litigation. *See* CFTC *Amicus* Br. 2, *N. Am. Derivatives Exchange, Inc. v. Nevada*, No. 25-7157 (9th Cir. Feb. 17, 2026) (ECF No. 38.2). But the asserted interest is a generalized interest in the Court's interpretation of the CEA, which the CFTC administers; notably, the CFTC did not say that its *own* rights, duties, or obligations are at issue in the Ninth Circuit. *See id.* Accepting Kalshi's argument would mean that any time a state-law claim involves a federal defense under a statute administered by a federal agency, the federal agency must be joined to the action—and the action therefore *must* be removed to federal court. That would massively expand the scope of federal-officer removal. Mot. 22. Kalshi's only response (Opp. 21) is to attempt to limit its position to statutes that grant "exclusive jurisdiction" to an agency, but nothing about its joinder argument is limited to that situation, *see* Opp. 20–21.

      For these reasons, all of Kalshi's asserted bases for removal fail. Kalshi also makes other arguments, including about the severity of the Board's harms and the scope of the relief the Board seeks, *see* Opp. 2, 6–7, but none of those are relevant to the removal question.

      **F.**     **An Award of Attorneys' Fees is Appropriate**

      As explained in the Board's motion and this reply, Kalshi lacked an objectively reasonable basis to remove the Board's suit to this Court. *See* Mot. 18–19. Ample binding precedent establishes that a federal defense is not a basis for federal-question removal. Kalshi has not established any reasonable ground to conclude that its CEA argument is anything other than a preemption defense. Ample binding precedent also establishes that complete preemption is exceptionally rare, and Kalshi entirely ignores this Court's decisions that foreclose its argument. And there is no authority anywhere that suggests that a plaintiff must join a federal agency to an action merely because the *defendant* may raise a preemption defense that will involve the interpretation of a federal statute.

      Kalshi responds that a removing party has an objectively reasonable basis for removal as long as a "circuit court of appeals" has not "rejected" the removing party's argument. Opp. 22 (quoting *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008)). But a court need not have rejected the precise basis for removal offered by a removing party for the removal to be objectively unreasonable. A party's position can be objectively unreasonable where, for example, it relies on a case as an asserted

basis for removal notwithstanding "clear factual distinctions" between its case and the case on which it relied. *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 552 (9th Cir. 2018). Where "it is obvious that [the removing party] would not have been entitled to removal in this case even if [its preferred] standard had been applied," an award of fees is appropriate. *Id.* The Court thus should award the Board costs and fees associated with responding to Kalshi's objectively unreasonable removal of this case.

### III. CONCLUSION

The Court should remand this matter to the First Judicial District Court of Nevada, Carson City, and should award attorney's fees to the Board.

DATED this 23rd day of February, 2026.

AARON D. FORD
Attorney General

By: */s/ Jessica E. Whelan*
　　Jessica E. Whelan (Bar No. 14781)
　　 Chief Deputy Solicitor General - Litigation
　　jwhelan@ag.nv.gov

*Attorneys for Plaintiff*