UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br><br>      Plaintiff,<br><br>  v.<br><br>KALSHIEX, LLC,<br><br>      Defendant. | Case No. 2:26-cv-00406-MMD-MDC<br><br>ORDER |

**I. SUMMARY**

Plaintiff State of Nevada ex rel. Nevada Gaming Control Board ("Board") sued KalshiEX, LLC ("Kalshi") in state court for alleged violations of State of Nevada gaming laws. (ECF No. 8-1 ("Complaint").) Kalshi removed the case to this Court. (ECF No. 1 ("Petition").) The Board now moves to remand, contending that Defendant's bases for removal—substantial federal question doctrine, complete preemption, and failure to join a necessary party that would have allowed for federal officer removal—lack merit. (ECF No. 10 ("Motion").)[1] The Court has considered the Board's Motion and the parties' briefing, and the Court also held a hearing on February 24, 2026.[2] (ECF No. 41 ("Hearing").) As further explained below, because the Court finds that the Board's claims arise under state law, the Commodity Exchange Act ("CEA") does not completely preempt the Board's claims, and the Commodity Futures Trade Commission ("CFTC") is not a necessary party to this action, the Court lacks subject matter jurisdiction and will grant remand.

---

[1] Kalshi responded (ECF No. 24 ("Response")) and the Board replied (ECF No. 34 ("Reply")).

[2] The Court held a joint hearing in a related removed case where the Board filed a motion to remand, *See Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize, Inc.*, No. 3:26-00089-MMD-CLB.

## II. BACKGROUND

Kalshi is a financial services company that operates a CFTC-registered designated contracts market (DCM) that allows users in Nevada to purchase its products called "event contracts." (ECF No. 10 at 7.) In early March of 2025, the Board sent Kalshi a cease-and-desist letter, instructing Kalshi that it could not accept wagers from persons inside of Nevada without a gaming license. (ECF No. 8-1 at 9.) Kalshi did not comply, and on March 28, 2025, Kalshi filed suit in federal court seeking a preliminary injunction to enjoin the State of Nevada from enforcing state law. (*Id.*); see *Kalshiex, LLC v. Hendrick, et al.*, No. 2:25-cv-00575-APG-BNW. Chief Judge Gordon granted, and then subsequently dissolved, a preliminary injunction, finding that the Board showed that Kalshi was unlikely to succeed on the merits. *Kalshiex, LLC v. Hendrick, et al.*, No. 2:25-cv-00575-APG-BNW, 2025 WL 3286282 (D. Nev. Nov. 24, 2025). Kalshi then appealed to the Ninth Circuit, see *KalshiEX, LLC v. Hendrick*, No. 25-7516 (9th Cir. filed Nov. 25, 2025), and requested a stay pending appeal from the Ninth Circuit. The Ninth Circuit has scheduled oral argument for April 16, 2026.

Since the preliminary injunction was dissolved, no court order prevents the Board from exercising enforcement power against Kalshi for violations of state law. On February 17, 2026, the Board filed a civil enforcement action under Nevada law, seeking to enjoin Kalshi's operations in Nevada until it obtained a Nevada gaming license and complied with Nevada's gaming laws. (ECF No. 8-1 at 8-11.) The Board's Complaint alleges that Kalshi's market violates NRS §§ 436.160, 463.350, 465.086 and 465.092, and seeks declaratory and injunctive relief under NRS §§ 463.343, 463.346 and 30.030. (*Id.* at 7-11.) The same day the state case was filed, Kalshi filed its Petition. (ECF No. 1.) On February 18, 2026, the Board filed its Motion. (ECF No. 10.) The Court subsequently issued an order granting a shortened briefing schedule on the Motion. (ECF No. 14.)

## III. DISCUSSION

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. See U.S. Const. art. III,

§ 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, a defendant may remove a suit filed in state court to federal court only if the federal court would have had original jurisdiction over the suit at commencement of the action. *See* 28 U.S.C. § 1441(a). "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108, 1113 (9th Cir. 2000).

Kalshi asserts three grounds for removal: (1) federal question jurisdiction under the substantial federal question doctrine; (2) federal question jurisdiction under the complete preemption doctrine; and (3) failure to name a necessary party that would have allowed for jurisdiction under the federal officer removal statute. (ECF No. 1 at 4-8.) The Court addresses each ground in turn.

    **A.**    **Federal Question Jurisdiction**

The Court has federal question jurisdiction under 28 U.S.C. § 1331 as to "only those cases in which a well-pleaded complaint establishes either that the federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983). On "rare occasions" federal question jurisdiction may exist for suits containing only state law claims. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). The Supreme Court has articulated a four-factor test for determining whether a federal court may exercise federal question jurisdiction over a state law claim. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). This Court may exercise jurisdiction if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314). The Supreme Court has often held that federal question jurisdiction is proper where the vindication of a right under state law necessarily turned on construction of federal law. *See Hornish v. King Cnty.*, 899 F.3d

680, 688 (9th Cir. 2018) (holding the *Grable* factors were met where plaintiff-appellants sought declaratory relief that the county had acquired certain property rights under the federal Trails Act).

Kalshi's central argument is that federal law is necessarily raised because the statutes underlying the Board's claims—in particular, NRS §§ 463.160 and 465.086(1)—require consideration of disputed federal law. (ECF No. 1 at 5.) Additionally, Kalshi argues that since it has acquired all necessary licenses under the exclusive jurisdiction of the CFTC under the CEA, the Board's claims will fail unless it can prove otherwise, therefore the state-law claims necessarily depend on the interpretation of federal law. (*Id.* at 5-6.) The Board counters that the Nevada statutes under which it seeks relief require no interpretation of federal law, and that Kalshi's latter argument is essentially a preemption defense, which is not a basis for removal. (ECF No. 10 at 14-19.) The Court agrees with the Board that a federal issue is not necessarily raised here to satisfy the first *Grable* factor.[3]

Kalshi essentially argues that NRS §§ 465.086(1) and 463.160(1) raise disputed issues of federal law because they contain references to federal law. (ECF No. 1 at 5.) NRS § 463.160(1) provides, in relevant part, "it is unlawful . . . [t]o deal, operate, carry on, conduct, maintain or expose for play in the state of Nevada any . . . sports pool . . . without having first procured . . . all federal, state, county, and municipal gaming licenses or registrations as required by statute. . . ." NRS § 463.160(1)(a). Under Kalshi's reading of the statute, this means "[the Board] must address. . . whether Kalshi holds the necessary federal licenses." (ECF No. 24 at 10). But as the Board points out, and the Court agrees, the Board does not contend that Kalshi lacks the requisite federal licenses. (ECF No. 10 at 16-17.) Rather, because the Board's state-law claims relate strictly to state licenses, "the Board can prove a violation of this provision based solely on Kalshi's lack of a state license." (*Id.* at 17.)

---

[3]Because the Court finds that the Board's case does not necessarily raise an issue of federal law, it need not address the remaining *Grable* factors.

The other statute on which Kalshi relies provides: "[e]xcept as otherwise provided by law, it is unlawful for a person to receive . . . any percentage or share of the money or property played, for accepting any bet or wager . . . without having first procured, and thereafter maintaining in effect, all federal, state, county and municipal gaming licenses as required by statute. . . ." NRS § 465.086(1). Kalshi argues that the reference to "federal. . . licenses" necessarily involves federal law. (ECF No. 1 at 5.) This is the same argument Kalshi raises as to NRS § 463.160, which the Court rejected *supra*. Kalshi also argues that "law" refers to federal law. (ECF No. 1 at 5-6.) As the Court explained during the Hearing, the Court finds persuasive the Board's argument that "law" as used in NRS § 465.086(1) refers to the law of Nevada. (ECF Nos. 10 at 17; ECF No. 41.) Moreover, Kalshi contends that the Nevada Supreme Court has interpreted identical statutory language in a federal statute to refer to both federal and state law, citing to *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1286 (Nev. 2006). (ECF No. 24 at 11.) But this argument is unpersuasive. As Kalshi points out, the statute subject to interpretation was a *federal* statute, and the court was interpreting the federal statute of limitations for a private cause of action based on a TCPA claim, which necessarily deferred to the state's statute of limitations.[4]

Additionally, Kalshi argues that the Board's claims rely on interpretation of the CEA, an argument the Board argues is a preemption defense. (ECF Nos. 1 at 5-6; 10 at 16.) But a federal issue raised as an anticipated preemption defense is not sufficient to give rise to federal question jurisdiction. See *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Negrete v. City of Oakland*, 46 F.4th 811, 819-20 (9th Cir. 2022) (internal quotation marks and citation omitted) ("A defense that raises a federal question is inadequate to confer federal question jurisdiction because whether an issue is necessarily raised depends on if it is an essential element of a plaintiff's claim.")

---

[4]The Court finds it unnecessary and declines to address the Board's alternative argument, citing to *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025), that even if the phrase refers to federal law, it provides for an affirmative defense, not an element of the Board's claims. (ECF No. 10 at 18.)

Kalshi cites to an out of circuit district court case, *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-CV-310 (CDL), 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), to support its argument that the Board's claims rely on interpretation of the CEA. *Georgia Gambling* is neither binding nor persuasive, in large part because the underlying state law is materially different. In *Georgia Gambling*, a private plaintiff brought a claim under a Georgia statute to recover illegal gambling losses. The state statute provides, "all '[g]ambling contracts are void' and authorizes 'any person' to recover '[m]oney paid or property delivered upon a gambling consideration'." 2026 WL 279375, at *2 (quoting O.C.G.A. § 13-8-3). But as the Board points out in its Motion, for the plaintiff to prevail in that case, it had to prove that the challenged contracts were illegal under federal law. *See id.* at *3; (ECF No. 10 at 18-19.) Here, the Nevada statutes at issue require no interpretation of federal law as the claims are that Kalshi's market offers sport and events-based contracts that are wagers subject to Nevada's gaming laws. (ECF No. 8-1.)

Accordingly, the Court finds that the Board's claims do not necessarily raise an issue of federal law as *Grable* requires, and the Court therefore lacks subject matter jurisdiction over the Board's state law claims.

**B.    Complete Preemption**

"Complete preemption is an exception to the well-pleaded complaint rule." *Saldana v. Glenhaven Healthcare LLC,* 27 F.4th 679, 686 (9th Cir. 2022). Complete preemption applies "'where the preemptive force of federal law is so extraordinary that it converts state common law claims into claims arising under federal law for the purposes of jurisdiction.'" *Rudel v. Hawai'i Mgmt. All. Ass'n*, 937 F.3d 1262, 1270 (9th Cir. 2019) (quoting *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th. Cir. 2011). Complete preemption exists when Congress "(1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020). "[R]emoval is proper under the complete preemption doctrine only when Congress intended the federal cause of action to be exclusive." *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005). In assessing whether Congress had such

intent, "it may be expected to make that atypical intention clear." See *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 698 (2006).

The parties dispute whether Congress intended the CEA to completely preempt all state authority to regulate trading on DCMs. The relevant portion of the CEA provides:

> The Commission shall have exclusive jurisdiction . . . with respect to accounts, agreements. . . and transactions involving swaps or contracts of sale of a commodity for future delivery . . . traded or executed on a contract market designated pursuant to section 7 of this title . . . . Except as hereinabove provided, nothing contained in this section shall (I) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (II) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws. Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State.

7 U.S.C. § 2(a)(1)(A). Kalshi contends in its Petition that the "CEA provides the CFTC with 'exclusive jurisdiction' over trading on DCMs. . . including Kalshi's exchange on which its event contracts are traded." (ECF No. 1 at 7.) In its Motion, the Board argues that the statutory provision that Kalshi cites does not apply because Kalshi's sports events contracts are not swaps, and even if Section 2(a) did apply, "Congress made clear that it had precisely the opposite intent" of complete preclusion, because it included a savings clause. (ECF No. 10 at 21.)

The Court agrees with the Board that the CEA does not completely preempt state laws. Kalshi argues the plain language of the statute clearly confers exclusive jurisdiction to the CFTC "over all 'transactions involving swaps' that are 'traded or executed on a contract market' designated by the CFTC." (ECF No. 24 at 13 (quoting 7 U.S.C. § 2(a)(1)(A).)[5] But as the Board argues in its Reply, that would establish preemption, not complete preemption. (ECF No. 34 at 7-8.)

---

[5]The Court finds persuasive Chief Judge Gordon's thoughtful analysis of the CEA and its preemptive effect in *N. Am. Derivatives Exch., Inc. v. Nevada on Rel. of Nevada Gaming Control Bd.*, No. 2:25-CV-00978-APG-BNW, 2025 WL 2916151 (D. Nev. Oct. 14, 2025). However, the Court need not find Kalshi's sports contracts are not swaps under the CEA, as this is not necessary to the issue of complete preemption.

7

The Court turns to relevant portion of the statute, the final sentence of which provides, "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." The Court agrees with the Board's argument that this savings clause cuts against a finding of complete preemption. (ECG No. 34 at 8-9.) Under a plain reading of the clause, Congress did not express a clear intent to "completely displace ordinarily applicable state law." *Empire Healthchoice*, 547 U.S. at 698. Moreover, the Court agrees with the Board that Kalshi's Petition misinterprets the savings clause. The phrase, "except as hereinabove provided" qualifies the preceding sentence, not the following sentence about state court jurisdiction. (ECF Nos. 1 at 7; 10 at 21 & n.1.) Considering the text of the statute, the Court finds that Congress did not make such an "atypical intention clear." *Empire Healthchoice*, 547 U.S. at 698. This is especially true because as the Ninth Circuit has indicated, "[w]hen a federal statute has a savings clause. . . , Congress did not intend complete preemption because there would be nothing left to save." *City of Oakland*, 969 F.3d at 908.[6]

Complete preemption is "rare."[7] *Arco*, 213 F.3d at 1113. The Board cites to two cases, *Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (ECF No. 34) and *Farmers Co-op Elevator v. Doden*, 946 F. Supp. 718, 728-29 & n.4 (N.D. Iowa 1996), in which other federal courts held that the CEA did not completely preempt state law claims.[8] (ECF No. 10 at 21.) While these cases are not binding, the

---

[6] Kalshi cites to legislative history in its Response. The Court finds this argument unpersuasive, in light of the clear text of Section 2 and this order's discussion of the rarity of complete preemption.

[7] Indeed, the Supreme Court has "identified only three statutes that meet [the] criteria" for complete preemption. *City of Oakland*, 969 F.3d at 905-06 (collecting statutes). While Kalshi attempts to draw the Court's attention to "courts nationwide [that] have found federal jurisdiction arising from complete preemption in connection with more than a dozen federal statutes," during the Hearing, Kalshi's counsel acknowledged that the Supreme Court has only found three statutes falling under the complete preemption doctrine. (ECF Nos. 41; 24 at 10.)

[8] In its response, Kalshi attempts to distinguish *Massachusetts* from this case by arguing that the Massachusets statute "**did not** raise an embedded federal issue." (ECF No. 24 at 5, 8 (emphasis in original).) However, as discussed *infra*, the Court finds here too that there is no embedded federal issue in the relevant Nevada statutes.

Court nonetheless finds them persuasive. And, as the Board contends—and Kalshi's counsel concedes—that there are no binding authorities finding that Congress intended the CEA to completely preemptive. (ECF Nos. 10 at 21; 41.)

Because the Court finds that Congress did not intend for the CEA to completely displace the Board's state law claims, removal was improper under the complete preemption doctrine.[9]

### C.    Necessary Party

Kalshi asserts removal would have been proper under Section 1442(a)(1)[10] had the Board named the CFTC, who is a necessary party to the Board's claim for declaratory and injunctive relief under NRS § 30.30. (ECF No. 1 at 7.) In particular, Kalshi contends the CFTC "had claimed a 'substantial interest' in the 'scope of its exclusive jurisdiction.'" (ECF No. 1 at 8; ECF No. 24 at 22.) The Board argues that the CFTC's interest is not the type of interest covered under NRS § 30.130. (ECF No. 10 at 23.) The Court agrees with the Board.

NRS § 30.130 provides, in pertinent part, that in a claim for declaratory relief under it, "all persons shall be made parties who have or claim any interest which would be affected by the declaration." In *Wells v. Bank of America,* 522 P.2d 1014, 1018 (Nev. 1974), the Nevada Supreme Court construed this section, as applied to a dispute over an agreement, to be "directed only to those who enjoy a legal interest in the agreement under scrutiny." Here, the Board's second claim for relief seeks a declaration that "NRS 465.086 and 465.092 prohibit KALSHI from making event-based contracts concerning the outcomes, or partial outcomes, of sporting or other events available on its market in Nevada without obtaining the required gaming licenses." (ECF No. 8-1 at 11.) The

---

[9] Because the Court finds that Congress did not intend complete preemption, it need not consider whether the CEA provides a substitute cause of action.

[10] The federal officer removal statute authorizes the removal of an action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under the color of such office. . . ." 28 U.S.C. § 1442(a)(1).

requested declaration is narrowly directed at Kalshi under Nevada law. As the Board points out, "[t]he Board is not trying to enforce Nevada gaming law—or any state law—against the CFTC[,] and the CFTC does not face any legal exposure from the relief sought."[11] (ECF No. 10 at 23.) The CFTC does not have a "legal interest" in such a declaration, notwithstanding its position as to its exclusive jurisdiction under the CEA.

In sum, the Court rejects Kalshi's argument that the CFTC is a necessary party to invoke jurisdiction under the federal officer removal statute.

### D. Attorneys' Fees

The Board also requests an award of attorneys' fees and costs incurred in seeking remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court cannot find that the three grounds for removal were objectively unreasonable to warrant imposition of fees. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). Accordingly, the Court denies the Board's request for attorneys' fees and costs.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

---

[11]Kalshi cites to *Turan Petroleum, Inc. ex. rel. Bektayev Bd. v. Luberski, Inc.*, 381 P.3d 670 (Table), 2012 WL 1142260 (Nev. 2012), an unpublished Nevada Supreme Court decision as support for its argument that relief under NRS § 30.030 requires the Board to sue "'all persons' who 'claim any interest' that would be affected by the declaration." (ECF No. 24 at 22 (emphasis removed).) But as the Board argues, *Turan* does not support Kalshi's argument. That case involved a group of shareholders suing the company, seeking a declaration challenging the election of the company's board of directors and actions taken by the board. The court found that because the action involved the board's "right to control the company" and declaratory relief "ostensibly affects and binds" the board, the board should have been joined as a party. *Id.* at *1. Here, declaratory relief would not affect and bind the CFTC.

It is therefore ordered that the Board's emergency motion to remand to state court (ECF No. 10) is granted. This action is remanded to the First Judicial District Court in Carson City, Nevada.

It is further order that the Board's request for attorneys' fees is denied.

The Clerk of Court is directed to close this case.

DATED THIS 2nd Day of March 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE