DENNIS L. KENNEDY
Nevada Bar No. 1462
PAUL C. WILLIAMS
Nevada Bar No. 12524
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
PWilliams@BaileyKennedy.com

NEAL KUMAR KATYAL
(Admitted *pro hac vice*)
JOSHUA B. STERLING
(Admitted *pro hac vice*)
WILLIAM E. HAVEMANN
(Admitted *pro hac vice*)
**MILBANK LLP**
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: 202.835.7500
Facsimile: 202.263.7586

GRANT R. MAINLAND
(*Pro hac vice* forthcoming)
MATTHEW J. LAROCHE
(Admitted *pro hac vice*)
ANDREW L. PORTER
(*Pro hac vice* forthcoming)
NICOLE D. VALENTE
(*Pro hac vice* forthcoming)
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212.530.5000
Facsimile: 212.530.5219

*Attorneys for Defendant KalshiEX, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br><br>Plaintiff,<br><br>vs.<br><br>KALSHIEX, LLC,<br><br>Defendant. | Case No. 2.26-cv-00406-MMD-MDC<br><br>**KALSHI'S EMERGENCY MOTION FOR A STAY PENDING APPEAL OF ORDER GRANTING MOTION TO REMAND** |

Defendant KalshiEX LLC ("Kalshi") submits this memorandum of law in support of its emergency motion, pursuant to Fed. R. App. P. 8(a)(1) and 28 U.S.C. § 1447(d), to stay the Court's March 2, 2026 Order, Dkt. No. 45 (the "Order"), remanding this case to the First Judicial District Court of Nevada, Carson City. Kalshi respectfully requests that the Court stay the Order pending appeal.[1] If the Court is inclined not to grant relief, Kalshi alternatively requests an interim stay while it seeks a stay pending appeal from the Ninth Circuit Court of Appeals. Kalshi proposes the following briefing schedule, to which Plaintiff has agreed in the parallel Polymarket Action:[2]

**Response**: March 6, 2026;

**Reply**: March 9, 2026;

**Hearing**: at the Court's convenience.

## INTRODUCTION

Kalshi respectfully submits that the Court should stay its Order pending appeal. At a minimum, the Order should be automatically stayed for 30 days pursuant to Fed. R. Civ. P. 62(a). Further, the serious legal questions raised by this case—including whether Plaintiff's claims necessarily raise federal issues under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), whether the Commodity Exchange Act ("CEA") completely preempts state regulation of trading on Kalshi's designated contract market ("DCM"), and whether federal officer jurisdiction exists because the Commodity Futures Trading Commission ("CFTC") is a necessary

---

[1] Alternatively, if the Clerk has already mailed the order, Kalshi respectfully requests that the Court "enter an order recalling the remand and" direct the Clerk to "notify the [state court] that the district court has resumed jurisdiction over the action" for the time being. *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1065 (9th Cir. 2021); *see also, e.g.*, *Town of Pine Hill v. 3M Co.*, 2025 WL 994187, at *1 (S.D. Ala. Apr. 2, 2025) (recalling case remanded before defendant could file its "motion to stay the court's remand order pending appeal"); *Bank of Am., N.A. v. El Paso Nat. Gas Co.*, 2017 WL 9478457, at *3 (W.D. Okla. Jan. 12, 2017) (same). While Plaintiff claims 'what's done is done' as to the Order here, *see* Dkt. No. 48 at 2-3, ***just today*** it separately represented to the Court that the Court may recall the Order to retain jurisdiction over the case. *See* Stipulation and Order Modifying Briefing Schedule on Defendants' Motion to Stay Pending Appeal, *Nevada ex rel. Nevada Gaming Control Board v. Blockratize, Inc.*, No. 3:26-cv-00089-MMD-CLB, Dkt. No. 44, ¶ 15 n.1 (March 3, 2026) (citing the above cases). The Court has recall authority and should exercise it. S*ee Kansas v. Pfizer, Inc*, 2025 WL 1548507, at *2-3 (D. Kan. May 30, 2025) (holding "the act of the Clerk transmitting the remand letter" was not legally effective).

[2] Stipulation and Order Modifying Briefing Schedule on Defendants' Motion to Stay Pending Appeal, *Nevada ex rel. Nevada Gaming Control Board v. Blockratize, Inc.*, No. 3:26-cv-00089-MMD-CLB, Dkt. No. 44, ¶ 9.

1 party under Nevada law—warrant appellate review *before* this Action proceeds. A stay will avoid
2 the "rat's nest of comity and federalism issues" that would result from simultaneous state and federal
3 proceedings, and serve the public interest in judicial economy. Kalshi is prepared to move
4 expeditiously through the appellate process—indeed, Kalshi filed its notice of appeal within 24 hours
5 of the Order—and seeks a prompt resolution of these important questions. The balance of equities
6 strongly favors a brief pause to allow the Ninth Circuit to provide guidance, rather than permitting
7 Plaintiff to obtain potentially conflicting rulings in state court while the appeal is pending.

8       As this Court knows, the ultimate issues in this case concern whether federal law—
9 specifically the CEA—preempts Nevada's attempt to regulate on-DCM trading subject to the
10 exclusive jurisdiction of the CFTC. These are not novel issues. Chief Judge Gordon has already
11 spent nearly a year adjudicating these very questions in related proceedings, and the Ninth Circuit is
12 holding argument on April 16, 2026. And while Plaintiff initially had agreed to stay its enforcement
13 efforts against Kalshi pending a decision by the Ninth Circuit on Kalshi's motion to stay the
14 dissolution of its injunction, Plaintiff chose instead to disregard those written commitments. To
15 sidestep the forthcoming guidance from the Ninth Circuit, two weeks ago, Plaintiff raced to state
16 court and sought to obtain *ex parte* relief against Kalshi. If the Order is permitted to stand pending
17 Kalshi's appeal, the Parties will be in an untenable position of litigating similar issues in three
18 different venues, with four different judicial audiences: the First Judicial District, this Court (before
19 Chief Judge Gordon), and two panels of the Ninth Circuit. There is no economy to that approach
20 and the risk of conflicting federal/state decisions resulting in irreparable harm to Kalshi is high. The
21 Court should stay the Order pending Kalshi's appeal.

22       Recent actions taken by Plaintiff illustrate why immediate relief from this Court is necessary.
23 At 7:59 a.m. local time today, Kalshi filed an emergency motion for an administrative stay of the
24 Court's Order remanding this case to state court, having provided advance notice to counsel for
25 Plaintiff. Just over an hour later—at 9:09 a.m.—Plaintiff filed a "Request for Submission" with the
26 First Judicial District Court in Carson City seeking immediate consideration of its previously-filed
27 application for an *ex parte* temporary restraining order, without informing the state court that (i) this
28 Court had already denied that motion, Dkt. No. 4 (citing L.R. 81.1) and Plaintiff had declined to re-

1  file it, or (ii) Kalshi's emergency motion for an administrative stay was pending before this Court.
2  This gamesmanship is emblematic of Plaintiff's litigation tactics of late and underscores the risk of
3  jurisdictional conflicts as Kalshi proceeds with its statutory right to an appeal of the Order.[3]

## BACKGROUND

Kalshi is a federally registered derivatives exchange regulated by the CFTC that offers event contracts—instruments that identify multiple possible outcomes, a payment schedule for those outcomes, and an expiration date—on its platform. Kalshi offers many kinds of event contracts related to climate, technology, popular culture, economics, politics, and sports. The latter two, however, have attracted regulatory attention from the State of Nevada. In January 2025, Kalshi began offering sports-related event contracts after certifying in submissions to the CFTC that the contracts complied with the CEA. *See* 7 U.S.C. § 7a-2(c)(1) (authorizing registered entities to submit self-certifications of new products); *see also* 17 C.F.R. § 40.2(a)(1) (prescribing information required to be contained in self-certifications). Although the CFTC is permitted to challenge these offerings under the "Special Rule," the CFTC has not taken issue with any of Kalshi's sports-event contracts, nor has it requested "additional evidence" concerning those contracts, pursuant to 17 C.F.R. § 40.2.

On March 4, 2025, the Nevada Gaming Control Board ("NGCB") sent a cease-and-desist letter to Kalshi. *See* Dkt. No. 24-5, Ex. 2. The cease-and-desist letter threatened Kalshi with both criminal and civil penalties and stated that Kalshi's offering of event contracts constitutes a category B felony under NRS 463.360(3). *Id*. at 2. It further stated that "NGCB, as well as all state and local law enforcement and regulatory agencies in Nevada, expressly reserve[d] all rights to pursue criminal and civil actions based on Kalshi's past and future conduct within the state." *Id.*

Kalshi filed suit in the District of Nevada in response to the NGCB's letter seeking an injunction that would prohibit the state from bringing an enforcement action under Nevada gaming laws. *Hendrick*, No. 2:25-cv-00575, Dkt. No. 1. Shortly thereafter, Chief Judge Gordon granted

---

[3] In a filing earlier this evening, Plaintiff—without mentioning that it was seeking *ex parte* relief in state court despite the Parties' year-long engagement on these issues—complained that its ploy of seeking *ex parte* relief against Kalshi was thwarted by Kalshi's removal of the action. Dkt. No. 48 at 1. That Plaintiff is requesting *ex parte* relief in state court, and urging the state court to order that relief as possible, underscores the importance of permitting Kalshi the opportunity to seek meaningful appellate relief with respect to this jurisdictional issue.

1   Kalshi a preliminary injunction on the ground that the "plain and unambiguous language" of the CEA
2   "reflects congressional intent to occupy the field of regulating CFTC-designated exchanges and the
3   transactions conducted on those exchanges." *KalshiEX, LLC v. Hendrick (Hendrick I)*, 2025 WL
4   1073495, at *6 (D. Nev. Apr. 9, 2025). Chief Judge Gordon later issued a contrary decision in *North
5   American Derivatives Exchange, Inc. v. Nevada* ("*Crypto*"), 2025 WL 2916151, at *9 (Oct. 14,
6   2025), prompting the defendants in *Hendrick* to move to dissolve the PI. *Hendrick*, No. 2:25-cv-
7   00575, Dkt. No. 142. The *Hendrick* court heard argument on the issue on November 14, 2025, and
8   ultimately dissolved the PI on November 25, 2025. *KalshiEX, LLC v. Hendrick (Hendrick II)*, 2025
9   WL 3286282, at *3 (D. Nev. Nov. 24, 2025). Kalshi appealed the decision, and the case is pending
10  before the Ninth Circuit, which has scheduled oral argument for April 16, 2026. *KalshiEX, LLC v.
11  Hendrick*, No. 25-7516 (9th Cir. Nov. 28, 2025), Dkt. No. 58. Kalshi has moved in the Ninth Circuit
12  for a stay of the dissolution order pending appeal, and Plaintiff agreed not to initiate an enforcement
13  action against Kalshi while that motion remained pending. KalshiEX LLC's Mot. to Stay Pending
14  Appeal, *Hendrick*, No. 25-7516 (9th Cir. Dec. 17, 2025), Dkt. No. 17.1.

15      Notwithstanding the pending action in federal court and Plaintiff's agreement to withhold
16  enforcement pending the Ninth Circuit's decision on Kalshi's stay motion, Plaintiff filed this Action
17  in the First Judicial District Court for Carson City on February 17, 2026. Dkt. No. 8-1. Plaintiff also
18  applied for an *ex parte* temporary restraining order and moved for a preliminary injunction that would
19  "prohibit[]" Kalshi from "offer[ing] event-based contracts relating to sporting ***and other events***" in
20  Nevada. Dkt. No. 8-2 at 13 (emphasis added). Kalshi removed the case to this Court later that day.
21  Dkt. No. 1. Plaintiff filed an emergency motion to remand on February 18, 2026. The Court heard
22  argument on the issue of remand on February 24, 2026, and ultimately granted Plaintiff's motion on
23  March 2, 2026. Dkt. No. 45. Kalshi filed a notice of appeal on the Court's order granting the motion
24  to remand on March 3, 2026. Dkt. No. 47.

25                                  **LEGAL STANDARD**

26      Rule 62 directs that "execution on a judgment and proceedings to enforce it are stayed for 30
27  days after its entry." Fed. R. Civ. P. 62(a). Outside that 30-day window, the issuance of a stay
28

pending appeal is an "exercise of judicial discretion," and whether a stay should be granted depends "upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009).

      Federal courts have the "inherent power … to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment." *Tribal Vill. of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988) (citation omitted). This includes the power to stay proceedings, which is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *TPOV Enters. 16, LLC v. Paris Las Vegas Operating Co., LLC*, 2021 WL 3698378, at *1 (D. Nev. Aug. 19, 2021) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A court need not "decide that it was wrong before" to grant a stay. *NetChoice v. Bonta*, 761 F. Supp. 3d 1232, 1235 (N.D. Cal. 2025). A court "may grant" relief "even though its own approach may be contrary to the requesting party's view of the merits." *US Bank, N.A. v. Renovista Ridge Master Prop. Owners Ass'n*, 2019 WL 8275339, at *3 (D. Nev. Mar. 27, 2019) (quotation omitted).

      In deciding whether to grant a stay, courts consider the following factors (which are similar to the preliminary injunction factors): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (per curiam) (quoting *Nken*, 556 U.S. at 434). The last two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

      While the first two factors "are the most critical," *Nken*, 556 U.S. at 434, this Court applies a "sliding scale" approach such that "a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez*, 640 F.3d at 964. As to the last two factors—they "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. "On a motion for a stay . . . pending appeal, a likelihood of success on the merits is a particularly troublesome factor because it requires the court to essentially predict that it has rendered an erroneous decision." *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 2021 WL 9316302, at *2 (D. Nev. Mar. 8, 2021) (cleaned up). "Thus, in this context, it is enough that the stay applicant has raised serious legal questions going to the merits, so

1  serious, substantial, and difficult as to make them a fair ground of litigation and thus for more
2  deliberate investigation." *Id.*; *see Risinger v. SOC LLC*, 2015 WL 7573191, at *1 (D. Nev. Nov. 24,
3  2015) (Du, J.) ("To satisfy the first prong, . . . it is enough to show that serious legal questions are
4  involved."). "[I]ssues of first impression are considered serious legal questions within the Ninth
5  Circuit." *McGhee v. N. Am. Bancard, LLC*, 2018 WL 11267348, at *1 (S.D. Cal. Feb. 6, 2018).

## ARGUMENT

### I.  The Court Should Issue an Automatic Stay Under Rule 62(a).

Rule 62(a)'s automatic-stay provision applies to the remand order. Rule 62 "stay[s] the execution or enforcement of a district court judgment for . . . 30 days after its entry." *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 333 (2021). An "order" counts as a "judgment" for Rule 62 purposes if "an appeal lies" from it. Fed. R. Civ. P. 54(a); *see* 11 Wright & Miller's Federal Practice & Procedure § 2902 (3d ed. 2025) ("Th[e] automatic 30-day stay applies only to judgments as defined in Rule 54(a)."). Because an appeal lies from an order remanding a case removed under section 1442, *see* 28 U.S.C. § 1447(d), Rule 62(a) applies to this Court's remand order.

Courts routinely apply Rule 62(a)'s automatic-stay rule to orders remanding an action to state court. *See, e.g.*, *3M Co.*, 2025 WL 994187, at *1 (staying remand order pursuant to Rule 62(a) after defendant removed on federal officer removal grounds); *Doe v. Gundersen Lutheran Health Sys., Inc.*, 2024 WL 663479 (W.D. Wis. Feb. 16, 2024); *Grosch v. Tyco Fire Prods. LP*, 2023 WL 5993548, at *8 (D. Ariz. Sept. 15, 2023) (same); *Doe v. Sarah Bush Lincoln Health Ctr.*, 2023 WL 12144306, at *2 (C.D. Ill. Nov. 20, 2023) (same); *Martin v. LCMC Health Holdings, Inc.*, 2023 WL 5173791, at *1–3 (E.D. La. Aug. 11, 2023) (same); *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 2020 WL 3053542, at *1 (S.D.W. Va. June 8, 2020) (same); *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3180775, at *1 (E.D. Va. June 7, 2016) (same). This is true even for state enforcement actions. *See, e.g.*, *Kansas*, 2025 WL 1548507; *Arkansas v. Optum, Inc.*, 2024 WL 6991679 (E.D. Ark. Dec. 31, 2024). This makes good sense—it gives a party time to evaluate its appellate rights under and the Court time to evaluate any further stay requests. This Court should do the same here and enter a 30-day stay pursuant to Rule 62(a)'s automatic-stay provision.

## II. Kalshi Has Raised Serious Questions on the Merits.

To establish that it is "likely to succeed on the merits," the moving party need only "demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor." *Golden Gate Rest. Ass'n v. City & County of San Francisco,* 512 F.3d 1112, 1116 (9th Cir. 2008) (citation omitted). The Ninth Circuit also uses the following "essentially interchangeable" formulations of this factor: a "substantial case on the merits," a "reasonable probability" of success, or a "fair prospect" of success. *Leiva-Perez*, 640 F.3d at 967-68. Importantly, the movant "need not demonstrate that it is more likely than not that [it] will win on the merits." *Id.* at 966.

Kalshi has a clear right to appeal the Remand Order because it removed these cases under the Federal Officer Removal Statute, 28 U.S.C. § 1442. While normally "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal," an "order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title *shall be* reviewable by appeal or otherwise." 28 U.S.C. § 1447(d) (emphasis added); *see Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022) ("Because *Baltimore* held that § 1447(d) gives us the authority to review the district court's entire remand order, . . . we now consider all bases for removal raised by the defendants, rather than addressing only federal officer removal.") (citing *B.P. P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230 (2021)).

### A. The Complaint Necessarily Raises Federal Issues.

The Order holds that the underlying Nevada statutes, NRS 463.160, 465.086, do not necessarily raise a federal issue. Respectfully, the Ninth Circuit is likely to adopt a different interpretation.

Begin with NRS 463.160: it renders engaging in a sportspool unlawful without procuring and maintaining "all federal, state, county and municipal gaming licenses or registrations as required by statute, regulation or ordinance or by the governing board of any unincorporated town."[4] The Order mistakes Kalshi's argument as focusing on the reference to "federal . . . licenses." Order at 4.

---

[4] NRS 465.086(1) similarly refers to: "all federal, state, county and municipal gaming licenses as required by statute, regulation or ordinance or by the governing board of any unincorporated town."

But the critical word in NRS 463.160 is not "federal" alone; the key is what is "required." The Nevada legislature determined that there are circumstances in which federal "gaming licenses or registrations" would be "required;" if not, there would be no need to include such language. *China Energy Corp. v. Hill*, 2014 WL 4831940, at *5 (D. Nev. Sep. 29, 2014) (Du, J.) (courts should "avoid statutory interpretation that renders language meaningless or superfluous") (citation omitted). The same is true for state, county, and municipal gaming licenses. In each such case, to evaluate a claim under NRS 463.160, the Court would have to determine what is "required" of the particular entity and whether it has satisfied that obligation. And this is what dooms the Order's finding that Plaintiff "can prove a violation of this provision based solely on Kalshi's lack of state license." Order at 4. ***Nothing*** about the structure or the text of NRS 463.160 suggests that proving a lack of a state license alone is sufficient for a violation.

NRS 465.086(1), in turn, provides that "*[e]xcept as otherwise provided by law*, it is unlawful for a person to receive . . . any percentage or share of the money or property played, for accepting any bet or wager . . . without having first procured, and thereafter maintaining in effect, all federal, state, county and municipal gaming licenses as required by statute. . . ." NRS 465.086(1) (emphasis added). The Court concluded that the "law" referenced in this provision "refers to the law of Nevada" rather than federal law. But the Ninth Circuit could readily conclude that this conclusion was erroneous for numerous reasons, including because the Supremacy Clause requires states to comply with federal as well as state law, because the very next clause of the statute refers to both federal and state law, because Nevada courts have interpreted identical language in a federal statute to refer both to federal and state law, *see Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1286 (Nev. 2006), and because the Supreme Court has held that incorporating state law "does not signify the inapplicability of federal law," *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982). *Id.* ("[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.").

Accordingly, *Georgia Gambling Recovery LLC v. Kalshi, Inc.*, 2026 WL 279375 (M.D. Ga. Feb 3, 2026), is particularly instructive here. The Order overlooks the similarities of the state law in Georgia to the provisions relied upon by Plaintiff here. Order at 6. The Georgia statute requires

1  courts to determine "whether the contract is unlawful under the law governing its validity." *Id*. at
2  *3. This is the exact same question presented by NRS 463.160 as to which licenses and registrations
3  are "required." In deciding the federal question issue, the Georgia district court considered and
4  rejected the same argument relied upon by Plaintiff and the Court in the Order – that proof concerning
5  state licensure (or lack thereof) was sufficient. *Id*. But, just as in Georgia, whether Kalshi has the
6  "gaming licenses and registrations required," NRS 463.160, "cannot be determined by reference to
7  [Nevada] law alone." *Georgia Gambling Recovery*, 2026 WL 279375, at *3. This raises a
8  "substantial legal questions" and "issues of first impression" that support a stay of the Order in this
9  Action. *McGhee*, 2018 WL 11267348, at *1-2 (granting stay pending appeal as enforceability of
10 certain contracts).

        **B.**    **The CEA Evinces Congressional Intent to Completely Preempt State Law Claims as Applied to Trading on DCMs.**

13  The Order found that the CEA does not completely preempt state law claims concerning
14 trading on DCMs. Order at 7. Respectfully, the Court's interpretation of the CEA and application
15 of the complete preemption doctrine is vulnerable on appeal.

16  The Order's complete preemption holding turns on Section 2(a)(1)(A)'s savings clause
17 concerning permissible *court* jurisdiction. Order at 8 ("The Court agrees with the Board's argument
18 that this savings clause cuts against a finding of complete preemption."). But this mistakes the
19 inquiry. There is no question that state courts possess jurisdiction over certain claims *authorized*
20 under the CEA. Thus, state courts have jurisdiction over state lawsuits alleging a violation of a
21 "general civil or criminal antifraud statute of such State," and over state lawsuits alleging a violation
22 of "any antifraud provision" of the CEA. 7 U.S.C. § 13a-2(7)-(8). And state courts have jurisdiction
23 over claims that involve a transaction "that is *not* conducted on" a DCM, such that it falls outside of
24 the field Congress preempted. *Id* § 16(e)(1)(B) (emphasis added). But nothing about Congress's
25 decision to grant **state courts** jurisdiction in these circumstances calls into question Congress's
26 decision to grant the CFTC "exclusive jurisdiction" to **regulate** transactions that are conducted on

DCMs, like Kalshi's event contracts.[5] Complete preemption asks whether there is exclusive federal regulation of the subject matter of the asserted state claim. *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1155 (9th Cir. 2013) (citation omitted) (complete preemption asks whether "Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim"); *see United States v. Price*, 314 F.3d 417, 421 (9th Cir. 2002). There clearly is.

Indeed, the Order's reliance (at 6, 8) on *City of Oakland v. B.P. P.L.C.*, 969 F.3d 895 (9th Cir. 2020), demonstrates the vulnerability of the Order's complete preemption analysis. While the Ninth Circuit did rely on the savings clause of the Clean Air Act (the "CAA") in rejecting complete preemption, it did not contemplate that every savings clause would be treated the same. The CAA's savings clause "makes clear that states retain the right to 'adopt or enforce' common law standards that apply to emissions" and preserves "[s]tate common law standards ... against preemption." *Id.* at 907-08 (quoting *Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 690-91 (6th Cir. 2015)). The Court explained that "[w]hen a federal statute has a saving clause *of this sort*, Congress did not intend complete preemption, because there would be nothing to save." *City of Oakland*, 969 F.3d at 908 (emphasis added) (cleaned up); *see also Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 57 (1st Cir. 2022) (holding complete preemption "off the table" for CAA because savings clause preserved "state and local governments' legal right to impose standards . . . that are stricter than national requirements"). There are significant differences between the CAA and the CEA. The CEA provides for the CFTC's "exclusive jurisdiction" over trading on DCMs without restraint. And the "savings clause" relied upon by the Order is not the same "sort" of savings clause at issue in *City of Oakland*; it merely permits state court jurisdiction. Nothing about Section 2(a)(1)(A) evidences an intent to permit concurrent state regulation, and there is half a century of commentary and legal precedent holding otherwise. *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980); *Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216, 232 (6th Cir. 1980) (similar); *United States v. Brien*, 617 F.2d 299, 310 (1st Cir. 1980) (similar); *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977

---

[5] The scope of which is confirmed in Chief Judge Gordon's decision in *N. Am. Derivatives Exch., Inc. v. Nevada on Rel. of Nevada Gaming Control Bd.*, No. 2:25-CV-00978-APG-BNW, 2025 WL 2916151, *5 (D. Nev. Oct. 14, 2025).

F.2d 1147, 1156-57 (7th Cir. 1992) (similar); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 591 (D.C. Cir. 2001) (similar).

Indeed, the Eighth Circuit found complete preemption in a case much like this one involving the Indian Gaming Regulatory Act ("IGRA"). IGRA contained a "comprehensive treatment of issues affecting the regulation of Indian gaming"; it created a federal agency "to oversee regulation"; the "legislative history contain[ed] a strong statement about IGRA's preemptive force"; and it "left states with no regulatory role over gaming except as expressly authorized by IGRA." *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 544-46 (8th Cir. 1996). Thus, everything about the statute "demonstrates that Congress foresaw that it would be federal courts which made determinations about gaming." *Id.* at 545. The same is true here. Congress in the CEA comprehensively regulated trading on DCMs; it expressly granted the CFTC exclusive jurisdiction to oversee that regulation; it noted its intent to preempt the field; it left states with no regulatory role except as specifically set out in the CEA; and it allowed states to proceed in state court only in narrow circumstances not involving regulating DCMs. Thus, the statutory text and structure make clear that Congress intended federal law to govern what trades may permissibly be offered on DCMs.

### C. The Complaint Failed to Name A Necessary Party That Would Have Supported Section 1442 Jurisdiction.

The Order, extending the scope of the Nevada Supreme Court's *Wells v. Bank of America*, 522 P.2d 1014 (Nev. 1974), held that a party is only a necessary party under NRS 30.130 if that party has a "legal interest." Order at 9-10. It also held that the CFTC does not have a legal interest in its exclusive jurisdiction over trading on DCMs. *Id*. That interpretation conflicts with the plain language of the statute and an appellate court is likely to reach a different result.

NRS 30.130 provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." Here, Plaintiff seeks to step in the shoes of Kalshi's exclusive federal regulator under the cover of state court and ban event contracts specially permitted under federal law, without giving that regulator an opportunity to be heard. That is clearly against the letter, and the spirit, of the law. *See Univ. of Nev. v. Tarkanian*, 95 Nev. 389, 396 (1979) (holding that joinder of interested parties is "not a matter of discretion, but of

1  absolute judicial duty") (citation omitted); *see also* NRS 30.140 (providing that NRS 30.130 "is to be liberally construed and administered"). And Plaintiff's argument, adopted by the Court in the Order (at 9-10), that the CFTC does not have a legal interest in the scope of its regulatory jurisdiction is contrary to its own claims of interest in the Complaint. Compl. ¶ 68 ("The BOARD has a strong legal interest in the controversy as it directly impacts the BOARD's ability to carry out its legislative charge to strictly regulate gaming because it is vitally important to Nevada, its economy, and the general welfare of its inhabitants."). This mirrors the CFTC's own obligations under 7 U.S.C. § 5 and other CEA provisions. If the Plaintiff has a "strong legal interest" in regulating gaming in Nevada, the same can be said for CFTC's "strong legal interest" in regulating event contracts traded on DCMs and subject to its exclusive jurisdiction. If a court is to issue a declaratory judgment or injunction against a DCM for trading on its exchange, the CFTC is a necessary party under NRS 30.130.

Nor does *Wells* support the Order's narrow interpretation of NRS 30.130. In *Wells*, the Nevada Supreme Court was tasked with determining whether heirs of a deceased contractual party had third-party standing to challenge the terms of that contract. *Wells*, 522 P.2d at 1017. There was never a determination of whether the heirs were necessary parties under NRS 30.130—indeed, the heirs brought the claims themselves. *Id*. Instead, when asked to brief their standing, the heirs analogized their interests to the broad requirements to name necessary parties under NRS 30.040 and NRS 30.130, among other statutes. *Id*. The Supreme Court rejected their claimed standing and held that the heirs were required to demonstrate that they had a legal interest in the contract. *Id*. at 1017-18. Because they could not do so, the Supreme Court found the heirs did not have standing and dismissed their claim. *Id*. at 1018. That is a far cry from the situation here.

### III.  Kalshi Will Suffer Irreparable Harm Absent a Stay.

Once the clerk mails the certified copy of the remand order to the State Court, "the State Court may thereupon proceed with such case." 28 U.S.C. § 1447(c). Absent a stay, the parties will therefore proceed simultaneously along at least three tracks: they will brief and argue Kalshi's appeal of the remand order in the Ninth Circuit while litigating Plaintiff's state law claims in state court—all the while litigating nearly identical cases in federal district court before Chief Judge Gordon and

1  before the Ninth Circuit (not to mention the other nearly identical case pending in the Southern
2  District of New York, the District of Utah, the District of Connecticut, the District of Ohio, and the
3  Middle District of Tennessee). This is exactly the "total chaos" Congress feared from states
4  attempting to enforce their own laws over the CEA. *Hearings Before the S. Comm. On Agric. &*
5  *Forestry,* 93d Cong., 2d Sess. 848, 685 (1974) (Statement of Sen. Clark).

6  Denying the stay motion could potentially render Kalshi's right to appeal hollow if the state
7  court undertakes to issue rulings on the merits. *Cf. Providence Journal Co. v. Fed. Bureau of*
8  *Investigation*, 595 F.2d 889, 890 (1st Cir. 1979) ("Meaningful review entails having the reviewing
9  court take a fresh look at the decision of the trial court before it becomes irrevocable."). Because
10 any "intervening state court judgment or order could render the appeal meaningless," Kalshi faces
11 "severe and irreparable harm if no stay is issued." *Northrop Grumman Tech. Servs., Inc. v. DynCorp*
12 *Int'l LLC*, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016).

13 In addition, Kalshi will be irreparably harmed if it is forced to litigate simultaneously its
14 federal appeal and the remanded state court action. Even if Kalshi's appeal is expedited, the
15 proceedings in the Ninth Circuit will take time. During that time, the state court would undoubtedly
16 rule on various motions such as a temporary restraining order and preliminary injunction. There is
17 a concrete and substantial risk that these motions would be decided differently in state court than
18 they would be in federal court, where there is a Ninth Circuit appeal being argued next month. As a
19 result, Kalshi may be forced to engage in expensive and burdensome compliance measures in state
20 court that would have been avoided had the case remained in federal court. There is no way to un-
21 ring the bell as a practical matter because Kalshi is unlikely to recover much (if any) of its compliance
22 costs from Plaintiff in this case. Such unrecoverable expenses constitute quintessential irreparable
23 harm. *See Raskas v. Johnson & Johnson*, 2013 WL 1818133, at *2 (E.D. Mo. Apr. 29, 2013);
24 *Citibank, N.A. v. Jackson*, 2017 WL 4511348, at *2 (W.D.N.C. Oct. 10, 2017) (granting motion to
25 stay remand and noting litigation costs would be avoided); *cf. Golden Gate Rest. Ass'n v. City & Cty.*
26 *of S.F.*, 512 F.3d 1112, 1125 (9th Cir. 2008) (considering "otherwise avoidable financial costs" in
27 irreparable harm analysis).
28

Moreover, if the Ninth Circuit ultimately concludes that Defendants properly removed this action, this Court would have to wrestle with the effects of state court rulings made while the Remand Order was on appeal. This would create a "rat's nest of comity and federalism issues" that would need to be untangled if the Ninth Circuit reverses. *Northrop Grumman*, 2016 WL 3346349 at *4. District courts routinely grant motions to stay remand orders pending appeal precisely because of the risk of inconsistent outcomes and other burdens posed by simultaneous state and federal court litigation. *See, e.g.*, *id.* at *3 (collecting cases); *County of San Mateo v. Chevron Corp., et al.*, No. 17-cv-04929-VC, Dkt. No. 240 (N.D. Cal. Apr. 9, 2018) (staying remand orders pending appeal and noting that "resolution by the court of appeals will materially advance the litigation"); *WOF SW GGP 1, LLC v. Quasar Energy Group, LLC*, 2020 WL 2758779, at *2 (D. Or. Jan. 7, 2020) (staying remand order pending appeal in part because "the risk of duplicitous litigation [] weighs in favor of a stay"); *White v. Univ. of Wash.*, 2024 WL 1673337, at *1 (W.D. Wash. Apr. 18, 2024) (staying remand pending appeal "[i]n the interest of the potential efficient and expedient resolution" of the case) (quotations omitted).

## IV. The Balance of Hardships Tip Sharply in Kalshi's Favor.

The balance of harms and public interest strongly tips in Kalshi's favor, necessitating a stay in light of the "serious questions" raised by Kalshi's appeal. *Assurance Wireless*, 100 F.4th at 1031. Denying a stay here would create judicial chaos that would harm not only Kalshi (as discussed *supra*), but Plaintiff and the public as well. There is a "cognizable public interest in promoting judicial economy, and avoiding duplicative litigation and inconsistent rulings by granting a stay." *United States v. Real Prop. & Improv. Located at 2366 San Pablo Ave., Berkeley, Cal.*, 2015 WL 525711, at *5 (N.D. Cal. Feb. 6, 2015); *see also Raskas*, 2013 WL 1818133, at *2 ("[P]ublic interest favors granting a stay [where] it would avoid potentially duplicative litigation in the state courts and federal courts, thereby conserving judicial resources and promoting judicial economy."); *Gage v. Cox Commc'ns, Inc.*, 2017 WL 1536220, at *2 (D. Nev. Apr. 27, 2017) (granting a stay pending resolution of related action that will dispose of common issues because doing so "will simplify and streamline proceedings and promote the efficient use of the parties' and Court's resources"). A stay is also favored where, without it, "parties would be potentially harmed by unnecessary briefing and

premature expenditures of time attorney's fees, and resources." *Gage*, 2017 WL 1536220, at *2; *see also TPOV Enters. 16, LLC*, 2021 WL 3698378, at *1 (staying proceedings where denying the stay would subject the parties to "undue delay and expense from wasteful supplementation of . . . briefing").

A stay here would be in the interest of both the public *and* Plaintiff. As is its right under 28 U.S.C. § 1447(d), Kalshi has already appealed the Order. (*See* Dkt. No. 47.) For the reasons discussed *supra*, there is a substantial likelihood that the Ninth Circuit will agree with Kalshi and direct this Court to retain jurisdiction over the Action. If the state court is permitted to proceed with the Action while the Ninth Circuit is deliberating, upon the Action's likely return to this Court, the Court will have to retrace and unwind the decisions and measures the state court will have already taken. That is the epitome of wasting both judicial and party resources, as well as inviting duplicative and inconsistent decisions.

These concerns are particularly acute in this case because, in addition to the newly docketed appeal for this Action, the parties are already proceeding in this Court and the Ninth Circuit on issues that directly implicate those Plaintiff is raising here. *See KalshiEX LLC v. Hendrick*, No. 2:25-cv-00575 (D. Nev.), *appeal docketed*, No. 25-07516 (9th Cir.). So, without a stay, the Action would proceed in state court despite *three* other pending actions before federal courts raising issues directly impacting this Action. That would be an absurd result, particularly considering that the *Hendrick* District Court has already spent a year hearing issues directly concerning those raised here and the Ninth Circuit has already agreed to hear Kalshi's appeal of the District Court's dissolution of the preliminary injunction it had previously entered on an expedited basis (the hearing is scheduled for April 16, 2026). "This court can enter stays 'pending resolution of independent proceedings which bear upon the case.'" *TPOV Enters. 16, LLC*, 2021 WL 3698378, at *1 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)). The Court should do so here because the most efficient—and least damaging—way to resolve this Action is to stay it until the Ninth Circuit has the chance to consider the equities and provide guidance on where the Action should be heard. That will "permit the parties to evaluate, and the Court to consider, viability of the claims under the most complete precedent." *Gage*, 2017 WL 1536220, at *2.

Kalshi recognizes that staying this Court's remand decision pending appeal would have the effect of temporarily halting Plaintiff's enforcement action. But in cases like this, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the delay it can entail." *Baltimore*, 593 U.S. at 245 ("[E]ven the most formidable policy arguments cannot overcome clear statutory directive." (cleaned up)). Plaintiff had options to ameliorate those harms prior to moving to remand, but chose not to do so. It should not be able to meaningfully curtail Kalshi's appellate rights now.

Moreover, Plaintiff overstates the harms associated with any delay. Plaintiff could have renewed its motion for a temporary restraining order and preliminary injunction in this Court before moving to remand, but it did not. *Cf. TPOV Enters. 16, LLC*, 2021 WL 3698378, at *1 (staying summary judgment proceedings despite not being able to "predict the exact length of the delay" because the parties had previously shown no sense of urgency). Plaintiff likewise proceeded under a preliminary injunction in the *Hendrick* action for more than six months without appealing the decision or moving to dissolve the injunction.

Further, though Plaintiff has claimed, relying on *Hendrick II* that "every day Kalshi operates" it imposes harms on Nevada, *see, e.g.*, Dkt. No. 48 at 4, Plaintiff elides that this action raises issues far broader than those presented in *Hendrick II*, because while that decision was focused on ***outcome-based sports-event contracts***, *Hendrick II,* 2025 WL 3286282, at *6, Plaintiff here seeks to bar all Kalshi contracts, sports or otherwise.[6] *See, e.g.*, Compl. ¶¶ 73, 82. And there is good reason to discount Plaintiff's *ipse dixit* claims of harm: it has entered into agreements permitting two other entities, Crypto.com and Robinhood, to offer non-sports event contracts in Nevada, and multiple sportsbooks have told their investors that prediction markets like Kalshi are not impacting their business.[7] And it is no answer that Plaintiff is harmed because it has been delayed in its attempt to

---

[6] Kalshi offers contracts related to an array of fields such as economics, finance, climate, technology, health, crypto, and popular culture.

[7] *See* Feb. 4, 2026 BetMGM FY 2025 Earnings Call Tr. at 12 ("As far as the impact of prediction markets on our business today, we're not seeing a material adverse impact that could be specifically attributed to prediction markets"); Feb. 17, 2026 Caesars Entertainment 2025 Q4 & YE Earnings Call at 4 ("Notwithstanding, our handle grew you in the fourth quarter, continues to grow. We're not seeing any impact [from prediction markets, like Kalshi] that we can see in our regulated markets as we operate today.").

1 seek *ex parte* relief against Kalshi in state court. "[E]x parte proceedings are anathema in our system
2 of justice." *Guenther v. Comm'r of Internal Rev.*, 889 F.2d 882, 884 (9th Cir. 1989); *see Liang v.*
3 *Nguyen*, 2009 WL 514073, at *2 (C.D. Cal. Feb. 26, 2009) ("*Ex parte* motions have great potential
4 to debilitate the adversary system.").

5 Further, any purported harm is sharply reduced by Kalshi's willingness to pursue its appeal
6 expeditiously. Kalshi has requested an expedited briefing schedule to permit the Court to promptly
7 resolve this motion, Kalshi noticed its appeal less than 24 hours after the Order was issued, and
8 Kalshi is prepared to seek expedited review in its appeal. That should assuage Plaintiff's concerns.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion and stay the remand order pending appeal. If the Court decides not to grant a stay pending appeal, Kalshi asks that it grant an administrative stay to preserve Kalshi's right to seek a stay from the Ninth Circuit.

Dated this 3rd day of March, 2026.

**BAILEY❖KENNEDY**

By: /s/ Paul C. Williams
DENNIS L. KENNEDY
Nevada Bar No. 1462
PAUL C. WILLIAMS
Nevada Bar No. 12524

NEAL KUMAR KATYAL
(Admitted *pro hac vice*)
JOSHUA B. STERLING
(Admitted *pro hac vice*)
WILLIAM E. HAVEMANN
(Admitted *pro hac vice*)
GRANT R. MAINLAND
(*Pro hac vice* forthcoming)
MATTHEW J. LAROCHE
(Admitted *pro hac vice*)
ANDREW L. PORTER
(*Pro hac vice* forthcoming)
NICOLE D. VALENTE
(*Pro hac vice* forthcoming)
**MILBANK LLP**

*Attorneys for Defendant KalshiEX, LLC*

# CERTIFICATE OF SERVICE

I certify that I am an employee of BAILEY❖KENNEDY and that on the 3rd day of March, 2026, service of the foregoing was made by mandatory electronic service through the United States District Court's electronic filing system and/or by email or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

JESSICA E. WHELAN  
SABRENA K. CLINTON  
JOHN S. MICHELA  
**STATE OF NEVADA**  
**OFFICE OF THE ATTORNEY GENERAL**  
1 State of Nevada Way, Suite 100  
Las Vegas, NV 89119  

Email:  jwhelan@ag.nv.gov  
sclinton@ag.nv.gov  
jmichela@ag.nv.gov  

*Attorneys for Plaintiff*

/s/ Paul C. Williams  
Employee of BAILEY❖KENNEDY