AARON D. FORD
  Attorney General
Jessica E. Whelan (Bar No. 14781)
  Chief Deputy Solicitor General – Litigation
Sabrena K. Clinton (Bar No. 6499)
  Senior Deputy Attorney General
John S. Michela (Bar No. 8189)
  Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3773 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov
jmichela@ag.nv.gov

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD, | Case No. 2:26-cv-00406-APG-MDC |
| Plaintiff, | |
| vs. | **PLAINTIFF'S OPPOSITION TO KALSHI'S EMERGENCY MOTION FOR A STAY PENDING APPEAL OF ORDER GRANTING MOTION TO REMAND** |
| KALSHIEX, LLC | |
| Defendant, | |

Plaintiff State of Nevada ex rel. Nevada Gaming Control Board (Board) files this response to Defendant KalshiEX LLC's Emergency Motion for a Stay Pending Appeal, ECF No. 49 (Mot.). Kalshi's merits arguments are weak, and the balance of harms strongly favors the Board. Indeed, as Chief Judge Gordon found, every day that Kalshi operates in the State imposes severe and irreparable harms on the State, its gaming industry, and the public. The Court therefore should deny the motion, which represents just another unfounded attempt by Kalshi to delay enforcement proceedings against its unlicensed gambling operations in Nevada.

## INTRODUCTION

This case involves a civil enforcement action under Nevada state law brought by the Board to enjoin Kalshi's unlawful gambling operations in Nevada. The Board brought this case in state court as

state law requires and, after Kalshi removed the case to this Court, the Court concluded that Kalshi had no valid basis for that removal. Kalshi now seeks to stay the Court's remand order, preventing the state court from taking the action necessary to stop the irreparable harm Kalshi is inflicting on the State, its gaming industry, and the public. The Court should deny Kalshi's request.

Kalshi first argues that the remand order should be automatically stayed for 30 days under Federal Rule of Civil Procedure 62(a). But that provision expressly grants the Court discretion not to enter a stay, and the Ninth Circuit has recently held that courts should *not* automatically stay remand orders pending appeal, but instead should evaluate requests for stays under the four-factor test set out in *Nken v. Holder*, 556 U.S. 418 (2009). *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 768 (9th Cir. 2025), *cert. denied*, 2026 WL 79931 (U.S. Jan. 12, 2026). Kalshi does not even mention that on-point, binding precedent.

Applying the *Nken* factors here, no stay is warranted. Kalshi is not likely to succeed on the merits, and the balance of equities tips heavily against its continued unlawful operation. To start, Kalshi does not have a right to an appeal at all. Remand orders generally are not appealable. There is an exception when the removal order expressly invokes the federal officer removal statute, 28 U.S.C. § 1442—but Kalshi did not invoke Section 1442 as a basis for removal.

Lack of appellate jurisdiction aside, this Court correctly rejected Kalshi's arguments for removal jurisdiction. Its preemption defense does not create federal-question jurisdiction; the complete-preemption doctrine does not apply to the Commodity Exchange Act (CEA); and the Board was not required to join the Commodity Futures Trading Commission (CFTC) as a necessary party under Nevada law. Kalshi's arguments for removal are insubstantial and do not raise any serious legal questions; the first is foreclosed by binding Ninth Circuit law, the second has been rejected by every court that has considered the issue, and the third is contrary to Nevada Supreme Court precedent.

Further, the balance of equities strongly favors the Board. Kalshi just wants to keep making money from its unlicensed gambling. All of its harms are self-inflicted and therefore are not irreparable as a matter of law. Indeed, after Judge Gordon ruled against Kalshi, it massively expanded its operations. Kalshi's reckless and aggressive expansion undermines its claim to equitable relief. Further, Kalshi's claim that having to litigate in state court will cause it irreparable harm is foreclosed by the Ninth Circuit's

decision in *Express Scripts*, which rejected the argument that litigating in state court, by itself, causes irreparable harm. Being subject to a state enforcement action is not an irreparable injury because Kalshi can raise any defense. Indeed, Kalshi already is subject to an enforcement action in Massachusetts.

On the other hand—as Chief Judge Gordon found—every day that Kalshi offers unlicensed gambling causes severe and irreparable injury to the State, its gaming industry, and the public. Nevada has a sovereign interest in enforcing its gaming laws. Kalshi's unlicensed operations severely disrupt Nevada's regulated gaming industry by giving Kalshi an unfair advantage over licensed competitors. That unlicensed gambling harms Nevada's economy and public fisc by depriving the State of critical tax revenues. And it harms the public, because Kalshi does not comply with Nevada's consumer-protection requirements, and its platform is open to match fixing, insider betting, and abuse. Given these documented harms that the Board faces every day, the balance of the hardships and the public interest weigh decisively against Kalshi's request for a stay.

## BACKGROUND

Kalshi offers sports, election, and other event betting in Nevada, but does not comply with Nevada gaming law. In March 2025, the Board sent Kalshi a cease-and-desist letter, directing it to stop accepting wagers on sports and elections from persons inside Nevada without a gaming license. Compl. ¶ 61. In response, Kalshi filed a lawsuit in this Court and sought a preliminary injunction. *See* Compl., No. 25-cv-575 (ECF No. 1).

After initially granting Kalshi a preliminary injunction on an expedited basis, Chief Judge Gordon dissolved that injunction, finding that Kalshi is not likely to succeed on the merits of its preemption argument and that the balance of equities does not tip in Kalshi's favor. *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *1, *14 (D. Nev. Nov. 24, 2025). Chief Judge Gordon determined that "the balance of hardships tips in favor of the Board, and the public interest favors dissolving the injunction." *Id.* at *3. Kalshi's claimed harms "are largely monetary" ("essentially that it will not be able to profit from [its] trades"), and Kalshi "created or amplified" those harms by "greatly expand[ing]" its business instead of "proceed[ing] cautiously until this and other lawsuits played out." *Id.* at *12–13. The Board, in contrast, faces "substantial" and "irreparable" harms that "weigh heavily" against Kalshi's asserted harms. *Id.* At

/ / /

1  *13–14. Judge Gordon concluded that Kalshi's continued operation deprives Nevada of needed revenue,

2  gives Kalshi an unfair advantage over its licensed competitors, and harms the public. *Id.*

3     Kalshi appealed the preliminary-injunction decision to the Ninth Circuit. *See KalshiEX, LLC v.*

4  *Hendrick*, No. 25-7516 (9th Cir. filed Nov. 28, 2025). Kalshi moved for a stay pending appeal, which

5  Chief Judge Gordon denied. *KalshiEX*, 2025 WL 3642346, at *1. Kalshi then requested a stay pending

6  appeal from the Ninth Circuit. *See* Motion, 9th Cir. No. 25-7516 (ECF No. 17.1). In order to give the

7  Ninth Circuit time to rule on that motion, the Board agreed not to bring a state enforcement proceeding

8  against Kalshi while the motion was pending. *Id.* at 9. The parties briefed the motion on an expedited

9  basis, so that it was fully briefed by January 5, 2026. *See* Reply, 9th Cir. No. 25-7516 (ECF No. 28.1).

10  But the Ninth Circuit did not rule on the motion, and instead referred the motion to the merits panel, *see*

11  Order, 9th Cir. No. 25-7516 (ECF No. 42.1), and scheduled oral argument for April 16, 2026, *see* Notice

12  of Oral Arg., 9th Cir. No. 25-7516 (ECF No. 58).

13     Rather than proceed with any sort of caution, Kalshi took full advantage of State Defendants'

14  reasonableness to dramatically expand its business. It started offering bets on even more sports events,

15  including amateur soccer in Spain and the Japanese basketball B League. *See* Dustin Gouker, *Kalshi Now*

16  *Lets You Bet on Dozens of International Soccer and Basketball Leagues*, Event Horizon (Jan. 26, 2026),

17  perma.cc/448F-B2QL. It partnered with a fantasy sports app, Sleeper, to offer sports contracts on

18  Sleeper's platform. *See* Nicola M. White, *Sports App Sleeper to Partner With Kalshi on Prediction*

19  *Markets*, Bloomberg Law (Feb. 6, 2026), perma.cc/W9YY-UP4T. And it expanded its marketing push,

20  including by taking out an enormous billboard on the Las Vegas Strip to encourage betting on its platform

21  for the Super Bowl. @vegasstarfish, *Kalshi Taking Over Las Vegas*, YouTube (Feb. 5, 2026), bit.ly/

22  4ku6iGb (@vegasstarfish, *Taking Over*).

23     Kalshi's efforts have led to a surge in users and trading volumes. In January 2026, Kalshi's app

24  was downloaded over 3 million times—more than for both DraftKings and FanDuel combined. *See* Ira

25  Boudway & Denitsa Tsekova, *Kalshi Downloads Zoom Past Gambling Apps Ahead of Super Bowl*,

26  Bloomberg Law (Feb. 5, 2026), perma.cc/U2AF-ND5U. "[N]o other sportsbook app" has ever reached

27  "[t]hree million downloads in a single month." *Id.* (internal quotation marks omitted). Kalshi's 30-day

28  volume has hit over $10 billion in wagers. Dustin Gouker, *The Handle: Inside Kalshi's First $10 Billion*

*Month*, The Closing Line (Feb. 10, 2026), perma.cc/E4G5-6XLZ. In particular, Kalshi reported over $1 billion in wagers on Super Bowl Sunday alone—over 27 times more than it reported for the Super Bowl in 2025. Anna Betts, *Prediction Market Kalshi Reached $1bn in Trading Volume During Super Bowl*, Guardian (Feb. 10, 2026), perma.cc/KDU4-ER7R. In contrast, betting volumes on the Super Bowl at Nevada's regulated sportsbooks declined nearly 15% from 2025, hitting a ten-year low. Sam McQuillan, *Super Bowl Betting Results Mask Game's Real Financial Story*, Legal Sports Report (Feb. 10, 2026), perma.cc/F8FQ-V4YR. Thus, Kalshi has consistently expanded its unlicensed gambling business, to the detriment of competitors that follow the rules.

Kalshi also made it clear that it would not stop operating in Nevada until the Board brought a state-court enforcement action. It told Chief Judge Gordon, in support of its motion to stay the case pending its appeal, that the Board would need to "take whatever enforcement measures may be available to" the Board before anything would "affect Kalshi's ongoing operations" in Nevada. Reply in Supp. of Stay Mot. 9, No. 25-cv-575 (ECF No. 262). That is, no matter how the Ninth Circuit decides Kalshi's preliminary-injunction appeal, Kalshi told Chief Judge Gordon that it would not stop operating in Nevada until the Board brought an enforcement action against it in state court.

In the meantime, the Board commenced enforcement actions against the other prediction markets known to be operating in Nevada. The Board secured temporary restraining orders against Polymarket and Coinbase, Order at 1, *Nevada v. Blockratize, Inc.*, No. 26-OC-00012-1B (Nev. 1st Jud. Dist. Jan. 29, 2026) (Polymarket TRO); Order at 1, *Nevada v. Coinbase Fin. Mkts., Inc.*, No. 26-OC-00030-1B (Nev. 1st Jud. Dist. Feb. 5, 2026) (Coinbase TRO), and reached agreements with Crypto.com and Robinhood for them to restrict their operations in Nevada, Notice, No. 25-cv-978 (ECF No. 110); Notice, No. 25-cv-1541 (ECF No. 91). To the Board's knowledge, Kalshi is the only prediction market operating unrestricted in Nevada.

At that point, with no court order barring an enforcement action, the Board determined that it could not hold off on enforcement against Kalshi any longer. On February 10, 2026, the Board notified the Ninth Circuit of its intent to bring a civil enforcement proceeding against Kalshi on February 17, 2026. *See* Notice, 9th Cir. No. 25-7516 (ECF No. 60.1). In response, Kalshi filed an emergency motion for an administrative stay, seeking to prohibit the Board from initiating a civil enforcement proceeding

against it. *See* Mot., 9th Cir. No. 25-7516 (ECF No. 62.1). On February 17, 2026, the Ninth Circuit denied that administrative-stay motion. *See* Order, 9th Cir. No. 25-7516 (ECF No. 69.1).

That same day, the Board initiated civil enforcement proceedings against Kalshi by filing this action in state court. The Board moved for a temporary restraining order (TRO) and a preliminary injunction, explaining that Kalshi's unlicensed operations cause severe and irreparable harm to the State, its gaming industry, and the public, and that Kalshi has been given ample notice of its obligation to comply with Nevada law (or cease offering its unlawful event contracts in the State). *See* ECF No. 8-2, at 7–13.

Within minutes of receiving a courtesy copy of the state court filings, Kalshi filed a notice of removal, asserting that the Board's state-law enforcement action could *only* be heard by this Court. *See* ECF No. 1. In its removal notice, Kalshi removed the case to federal court "pursuant to 28 U.S.C. §§ 1331, 1441." *Id.* at 2. Kalshi asserted that removal was proper because (1) the Board's state-law claims raise federal questions, *id.* ¶¶ 15-22; (2) the CEA completely preempts the Board's state-law claims, *id.* ¶¶ 23-25; and (3) under state law, the Board should have joined the CFTC as a necessary party, *id.* ¶¶ 26-27.

On March 2, 2026, this Court rejected all of Kalshi's asserted grounds for removal and ordered this case remanded to the state court. ECF No. 45. With respect to federal question jurisdiction, the Court rejected Kalshi's argument that the Board's complaint necessarily raised a substantial federal issue. *Id.* at 4–5. The Court recognized that Kalshi's claimed federal issue—whether the CEA preempts Nevada gaming law—is a federal defense, and it is well settled that a federal defense does not create federal-question jurisdiction. *Id.* at 5 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987), and *Negrete v. City of Oakland*, 46 F.4th 811, 819-20 (9th Cir. 2022). The Court explained that a court does not necessarily have to interpret federal law to determine whether Kalshi's conduct violates Nevada's gaming laws, because those laws do not incorporate federal law, and the Board's claims are based on Kalshi's failure to obtain a Nevada license and comply with Nevada-specific requirements, not any failure on Kalshi's part to obtain a federal license. *Id.*

With respect to complete preemption, the Court rejected Kalshi's assertion that the CEA "completely preempts" state law. ECF No. 45 at 8. The Court explained that the CEA contains a savings

clause that expressly indicates that Congress did not displace all ordinarily applicable state law. *Id.* The Court further explained that complete preemption is "rare," and that the only other courts to consider the issue both rejected Kalshi's argument. *Id.* at 8-9 (citing *Massachusetts v. KalshiEX LLC*, No. 1:25-cv-12595 (D. Mass. Oct. 28, 2025) (ECF No. 34) (Mass. Order), and *Farmers Co-op Elevator v. Doden*, 946 F. Supp. 718, 728-29 & n.4 (N.D. Iowa 1996)).

With respect to joinder, the Court rejected Kalshi's argument that Nevada law required the Board to name the CFTC as a necessary party. ECF No. 45 at 9. The Court explained that the CFTC did not have the sort of legal interest in this action for declaratory relief that might require it to be named. *Id.* The Board's request for declaratory relief is "narrowly directed at Kalshi under Nevada law," and it did not seek to apply Nevada law to the CFTC or subject the CFTC to any legal exposure. *Id.* at 9-10.

The Court forwarded its remand order to the state court on March 2, 2026. *See* ECF No. 45 (docket entry). The next day, Kalshi filed its motion for a stay pending appeal. On March 4, the Court recalled its remand order. *See* ECF No. 50.

## LEGAL STANDARD

The Ninth Circuit recently addressed the standard for a stay of a remand order pending appeal in *Express Scripts*. The Court held that a case should not automatically be stayed pending an appeal of a district court's order remanding the case to state court; rather, the court should evaluate whether a stay is warranted using the factors set out in *Nken*. 139 F.4th at 770.

Thus, in determining whether to grant a stay of a remand order pending appeal, a court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Express Scripts*, 139 F.4th at 768 (quoting *Nken*, 556 U.S. at 434). "Where the government is the opposing party, the balancing of the harm and the public interest merge." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025).

Here, this Court has already determined that Kalshi is not likely to succeed on the merits. The Ninth Circuit has indicated that a stay pending appeal nonetheless may be appropriate if a movant shows that it has raised "serious legal questions" and that the balance of hardships "tips sharply" in its favor.

*Leiva-Perez v. Holder*, 640 F.3d 962, 968, 970 (9th Cir. 2011) (internal quotation marks omitted); *see Express Scripts*, 139 F.4th at 772 n.8.[1]

**ARGUMENT**

**I.     Kalshi Is Not Entitled to an Automatic Stay Under Rule 62(a)**

Kalshi first argues (Mot. 6) that this Court should enter an automatic stay of the remand order under Federal Rule of Civil Procedure 62(a). That rule provides that (with exceptions not relevant here) "execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, *unless the court orders otherwise*." Fed. R. Civ. P. 62(a) (emphasis added). As an initial matter, Rule 62(a) is inapt, both because Kalshi seeks a stay for the duration of the appeal and not just for 30 days, and because it is not clear that Rule 62(a) even applies to remand orders. *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 437 (5th Cir. 2001) (limiting Rule 62(a) to only "judgments for money"). But assuming Rule 62(a) has some relevance here, it does not set out an invariable rule—the court can "order otherwise" and not enter a stay. And in the exact context here, the Ninth Circuit has rejected the view that an automatic stay applies to remand orders, and instead has held that a request for a stay should be evaluated under the *Nken* factors. *See Express Scripts*, 139 F.4th at 768.

Specifically, in *Express Scripts*, the Ninth Circuit considered whether a district court should automatically stay a remand order. 139 F.4th at 767–68. The defendants in that case had removed the case to federal court on grounds of federal officer removal. *Id.* at 766. When the federal court remanded the case, the defendants appealed the remand order and argued that the remand order should be stayed pending appeal. *Id.* at 766–67. In particular, the defendants argued that an automatic stay was warranted under *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), where the Supreme Court held that when a party exercises its statutory right to appeal the denial of a motion to compel arbitration under the Federal Arbitration Act, the district court should automatically stay all proceedings during the appeal. *Id.* at 741.

In *Express Scripts*, the Ninth Circuit rejected the defendants' arguments for an automatic stay of a remand order. The Court held that the district court should *not* automatically stay the remand order but

---

[1]     This approach appears inconsistent with *Nken* and *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), both of which require showing a likelihood of success on the merits, not merely a serious question on the merits. *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 & n.12 (9th Cir. 2024).

instead should decide whether a stay is warranted using the four-factor test set out in *Nken*. *Express Scripts*, 139 F.4th at 771–72. The Court explained that removal implicates important federalism principles that are "not at issue where parties seek to compel arbitration." *Id.* at 768. When cases are improperly removed, that "deprive[s] [the] state courts of jurisdiction over cases that should rightfully be heard in their fora, in violation of comity principles." *Id.* at 769. Requiring district courts to then automatically stay all litigation pending appeal would only exacerbate this "federal infringement on state courts' rights." *Id.*

The better course, the Court explained, is for the district court to evaluate whether to stay the remand order in each case under *Nken. Express Scripts*, 139 F.4th at 769. The Court further suggested that, if anything, the district court should err on the side of *denying* the stay, because state courts also are empowered to enter stays. *Id.* (noting that "a state court could decide to stay a remanded case if, in its opinion, it thinks the defendants who removed . . . do have a strong likelihood of success on appeal"). Thus, the Court concluded that "an automatic stay pending appeal of a federal officer removal remand order would run afoul of the delicate balance of federalism." *Id.*

Finally, the Court noted, requiring an automatic stay would "encourage gamesmanship by defendants that would frustrate principles of judicial economy." *Express Scripts*, 139 F.4th at 771–72. If an automatic stay applied, "[a]ny defendant seeking to delay . . . could craft an argument for federal officer removal then appeal a district court's remand order." *Id.* at 772. Thus, an automatic stay rule would encourage defendants to file meritless removal motions and then appeal just to delay adjudication on the merits. *Id.* For all these reasons, the Court held that a district court should not automatically stay litigation pending the appeal of a remand order, but instead should evaluate a request for a stay pending appeal under the *Nken* factors. *Id.*

Although Kalshi relies on Rule 62(a) instead of *Coinbase, Express Scripts*' reasoning applies equally here. Rule 62(a) expressly gives the Court discretion not to enter a stay, by providing that the Court should enter a stay unless the Court "orders otherwise." Fed. R. Civ. P. 62(a); *see Maranino v. Cabrini of Westchester*, 2022 WL 17995107, at *1 (S.D.N.Y. Dec. 29, 2022). *Express Scripts* makes clear that an automatic stay is *not* warranted in the context of an appeal of a remand order, given the important federalism principles involved and the potential for gamesmanship from entering an automatic

stay. 139 F.4th at 768–72. Kalshi has engaged in exactly that type of gamesmanship here, by taking every opportunity to delay the case, including baselessly removing this case within minutes of receiving the filings and then filing a notice of appeal when it has no right to appeal. And its arguments that *only* the federal courts can decide this case disregards Nevada's strong sovereign interest in adjudicating a state enforcement action in its own courts. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983) (a federal court should be "reluctant to snatch" a case that "a State has brought from the courts of that State, unless some clear rule demands it").

Notably, Kalshi does not even cite *Express Scripts*. Instead, it cites (Mot. 6) decisions where district courts entered automatic stays under Rule 62(a) upon entering remand orders. But all of these decisions predate *Express Scripts*, and none acknowledges (much less addresses) the significant federalism interests implicated. The cited in-circuit decisions are no longer good law after *Express Scripts*, and the cited out-of-circuit decisions have no persuasive force because they do not address the reasoning in *Express Scripts*. The Court accordingly should not enter an automatic stay under Rule 62(a), but instead should evaluate whether a stay is warranted under *Nken. See* 139 F.4th at 769.

## II.    Kalshi Has Not Satisfied the *Nken* Factors

This Court correctly concluded that this case should be remanded to state court. Kalshi does not have any right to appeal that order, and it has not identified any error in the Court's decision or otherwise shown that it has any likelihood of success on the merits of its appeal. Further, the balance of hardships and public interest weigh heavily against allowing Kalshi to continue its unlicensed gambling operations in Nevada pending its appeal of the remand order in this case. There is no reason that Kalshi alone should be allowed to continue its unlawful gambling operations unfettered, without even having to answer for its conduct in state court.

### A.    Kalshi lacks the right to appeal

As a threshold matter, Kalshi has no chance of success on the merits of its appeal because it does not have a right to appeal the remand order. Ordinarily, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). A narrow exception exists when the case is "removed pursuant to section 1442"—the federal officer removal statute. *Id.*; *see* 28 U.S.C. § 1447(d). In order for this exception to apply, the defendant's "notice of

removal must assert the case is removable in accordance with or by reason of" Section 1442, "by citing § 1442 as one of its grounds of removal." *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1122 (9th Cir. 2023) (internal quotation marks omitted).

Here, Kalshi's notice of removal invoked only 28 U.S.C. §§ 1331 and 1441—not 28 U.S.C. § 1442. ECF No. 1, at 2. Specifically, Kalshi stated that it was removing the action "pursuant to 28 U.S.C. §§ 1331, 1441" and asserted that this Court "has federal question jurisdiction over this Action under 28 U.S.C. § 1331." *Id.* Kalshi mentioned Section 1442 only once in its notice, in passing, when it stated that if the Board had named the CFTC "as a party in this Action," that "would have provided yet another basis for removal. *See* 28 U.S.C. § 1442(a)(1)." *Id.* ¶ 27. Thus, the most that Kalshi said is that Section 1442 *would have* been available as a ground for removal that the *CFTC* could invoke *if* the CFTC were a party—not that Section 1442 actually *was* a ground for removal that *Kalshi* had invoked. *See Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 606 (2d Cir. 2014) ("[A] removing defendant cannot create appellate jurisdiction through mere citation to § 1442.").

Indeed, Kalshi could not have invoked Section 1442 at all. As the Ninth Circuit has explained, "[t]o invoke § 1442, the removing party must allege in the removal notice that" the requirements for federal-officer removal are met. *Friedenberg*, 68 F.4th at 1123. Kalshi did not do that. For federal officer removal to apply, a removing defendant must (1) demonstrate that it is a federal officer or person "acting under" a federal officer, (2) demonstrate that the plaintiff's claims are "for, or relating to" an act under color of federal office, and (3) raise a colorable federal defense. *See Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). Kalshi did not allege that any of these requirements is met. In particular, it did not allege the threshold requirement – that the actions at issue are those of a federal officer or a person who "acted under color of federal office." *Friedenberg*, 68 F.4th at 1123–24.

Indeed, Kalshi's argument is not that it is acting under the direction of the CFTC. Rather, the argument is that if the Board had joined the CFTC, then *the CFTC* could have removed the case under Section 1442. So, there is a mismatch between the asserted ground for removal and the party removing the case. Even if Kalshi were correct about the need to join the CFTC, that would not give *Kalshi* the right to remove the case under the federal officer removal statute; that statute permits only "[t]he United States or any agency thereof or any officer (or any person acting under that officer)" to remove the case

to federal court. 28 U.S.C. § 1442(a)(1). A co-defendant that is *not* acting under the federal officer cannot invoke the statute on the federal officer's behalf. *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("[T]he federal officer is the only one entitled to remove under § 1442"); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 607 (5th Cir. 2018) (holding that a co-defendant that was not a federal officer "could not have asserted federal officer jurisdiction on [the federal officer defendant's] behalf").[2] Kalshi thus could not have, and did not, invoke Section 1442 as a basis for removal, so it lacks the right to appeal the remand order.

**B.    Kalshi has not shown a likelihood of success on the merits or even serious questions on the merits of its removal arguments**

Even if Kalshi could appeal the remand order, this Court already thoroughly considered and rejected, all of Kalshi's asserted grounds for removal. *See* ECF No. 45. Kalshi thus is not likely to succeed on appeal. Notably, the most Kalshi argues is that it has raised "serious legal questions" on the merits. Mot. 7.

A "serious question[]" is one that is "substantial, difficult, and doubtful," and which "make[s] [for] a fair ground for litigation." *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc) (internal quotation marks omitted). There must be a "fair chance of success on the merits." *Id.* (internal quotation marks omitted). A merely "plausible" or novel argument is insufficient. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 863 (9th Cir. 2022). Kalshi has not identified any serious legal questions here. And even if it did, the immense harm it causes the State every day would warrant denying the stay motion.

**1.    Federal-question jurisdiction**

First, Kalshi argues (Mot. 7) that it has raised a serious legal question with respect to federal question jurisdiction. That is incorrect. The Board filed this action in Nevada state court, seeking to enforce state gaming law and asserting only state-law causes of action. Compl. ¶¶ 62-82. There is no federal claim on the face of the well-pleaded complaint. If Kalshi believes federal law supplies a defense

---

[2]    In a different state enforcement action brought against Polymarket, Polymarket invoked federal officer jurisdiction, contending that it is acting under the direction of the CFTC in operating its market. *See* Notice of Removal at 7–12, No. 26-cv-89 (ECF No. 1). Kalshi conspicuously does not make that argument. In any event, that argument is wrong, for the reasons this Court explained in Polymarket's case. *Nevada v. Blockratize, Inc.*, 2026 WL 579376, at *2–4 (D. Nev. Mar. 2, 2026).

to those claims, it is free to raise that defense in state court. It may not transform a state-law enforcement action into a federal case through removal.

As Kalshi has repeatedly recognized, its federal law argument is a preemption defense. In its complaint to enjoin Nevada from enforcing Nevada gaming law, Kalshi described its federal-law argument as a preemption argument, *see* Compl. ¶ 1, No. 25-cv-575 (ECF No. 1); its motion for a preliminary injunction, *see, e.g.*, Mot. 2, D. Nev. No. 25-cv-575 (ECF No. 18); its preliminary-injunction briefing, *see, e.g.*, Reply 2, D. Nev. No. 25-cv-575 (ECF No. 40); and its motion for an injunction pending appeal and the briefing on that motion, *see, e.g.*, Motion 10, D. Nev. No. 25-cv-575 (ECF No. 238); Reply 1, D. Nev. No. 25-cv-575 (ECF No. 256), all do the same. In the court of appeals, Kalshi again described its argument about CFTC jurisdiction as a "preemption" argument in its opening brief and reply brief, *see, e.g.*, Opening Br. 1, 2, 4, 26–40, 9th Cir. No. 25-7516 (ECF No. 20.1); Reply Br. 2–3, 21–33, 9th Cir. No. 25-7516 (ECF No. 67.1), and in its briefing where it sought to enjoin state enforcement pending appeal, *see, e.g.*, Mot. 1, 10–11, 9th Cir. No. 25-7516 (ECF No. 17.1). Yet it is well established that a preemption defense is not a basis for removal. Cases "may not be removed to federal court on the basis of . . . the defense of pre-emption." *Caterpillar*, 482 U.S. at 393; *see Negrete*, 46 F.4th at 817 (same).

Kalshi repeats its argument that NRS §§ 463.160 and 463.085 incorporate federal law by requiring entities offering gaming in Nevada to obtain a "federal" gaming license. Mot. 7–8. But as the Court explained, the Board's lawsuit in this case does not challenge Kalshi's lack of a federal license. ECF No. 45, at 4. The Board challenges only Kalshi's lack of a *state* license. *Id.* Kalshi argues that "proving a lack of a state license alone" is not sufficient for a violation of these provisions, Mot. 8, but that is exactly what the provisions say—they say that a gaming operator must possess "all federal, state, county and municipal gaming licenses" "as required by statute, regulation or ordinance." NRS §§ 463.160, 465.086(1). Thus, lacking any *one* of the required licenses is sufficient to violate these statutes. Kalshi's contrary argument—that the Board must prove in every enforcement action that the defendant does not possess the necessary federal "license"—would make every enforcement action removable to federal court, even when the defendant does not claim to be a CFTC-registered DCM. That makes no sense at all.

1    Kalshi also repeats its argument that NRS § 463.085 incorporates federal law by requiring entities

2  offering gaming in Nevada to obtain a Nevada gaming license "[e]xcept as otherwise provided by law."

3  Mot. 8 (internal quotation marks omitted). This Court correctly concluded that this statutory language in

4  a Nevada statute should be understood to refer to Nevada law. *See* ECF No. 45 at 5; *Houston v. Moore*,

5  18 U.S. (5. Wheat.) 1, 42 (1820). And even if the statute were understood to incorporate federal law, that

6  would at most provide a federal affirmative defense. *See Cunningham v. Cornell Univ.*, 604 U.S. 693,

7  701 (2025). It is black-letter law that an affirmative defense cannot form the basis of federal-question

8  jurisdiction, "even if both parties concede that the federal defense is the only question truly at issue."

9  *Caterpillar*, 482 U.S. at 393. The Court declined to reach this argument given its determination that the

10 statute does not implicate federal law at all, but it is another reason why Kalshi fails to show any serious

11 legal question on appeal. Kalshi has no answer on this point.

12    In response to the Court's finding that NRS § 463.085 references only Nevada law, Kalshi cites

13 (Mot. 8) *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982), for the

14 proposition that the Supremacy Clause makes federal law a part of each State's law. But *Fidelity Federal*

15 was not about how to read a state statute's reference to "law" language. On that point, the Supreme Court

16 already had held that when a statute refers to "law" generally, the statute is presumed to refer "only . . .

17 to the laws of the government" that enacted the statute, *Houston*, 18 U.S. at 42—here, Nevada law.

18 *Fidelity Federal* was about interpreting a federal regulation, and the question was whether the

19 regulation's incorporation of state law precluded application of federal law; the Supreme Court said "no,"

20 because federal law always applies. That decision regarding the interpretation of a federal regulation has

21 nothing to do with how a reference to "law" in a Nevada statute should be interpreted as a matter of

22 Nevada law. Further, no one disputes that federal law applies to the States; that is why Kalshi may assert

23 a preemption defense in state court. But that does not transform that preemption defense into a basis for

24 removal or otherwise suggest that Nevada must prove the absence of a federal conflict to show a state-

25 law violation. *See Caterpillar*, 482 U.S. at 393.

26    Kalshi continues (Mot. 8–9) to rely on *Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL

27 279375 (M.D. Ga. Feb. 3, 2026), but as the Court recognized, the state law at issue in that case is nothing

28 like the Nevada law at issue here, *see* ECF No. 45 at 6. The Georgia law in *Georgia Gambling* provided

that "[g]ambling contracts" were "void," and authorized recovery of "[m]oney paid . . . upon a gambling consideration" in connection with such contracts, O.C.G.A. § 13-8-3(b), and the Georgia Supreme Court had stated that whether a gambling contract was void under this provision "depends on whether the contract is unlawful under the law governing its validity," *Georgia Gambling*, 2026 WL 279375, at *3 (citing *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)). As a result, to succeed on its state-law claim, the plaintiff had to prove that the challenged contracts were illegal under federal law. *See id.* at *2–3. Kalshi can identify no similar incorporation of federal law into the elements of the Board's state-law claims here.

Kalshi's federal-question arguments are contrary to binding Ninth Circuit and Supreme Court precedent. They do not raise any serious legal issue.

## 2. Complete preemption

Second, Kalshi argues (Mot. 9) that it has raised a serious legal question with respect to complete preemption. That is incorrect. Complete preemption is a truly extraordinary doctrine. It applies where federal law not only displaces state law, but also takes away all power from state courts to decide claims that touch on that area. *City of Oakland v. BP PLC*, 969 F.3d 895, 906–08 (9th Cir. 2020). Two requirements must be met: (1) the federal statute must show an intent to "preempt every state cause of action within the scope" of the statute, and (2) the statute must provide a "substitute cause of action" which would allow the plaintiff to "remedy the wrong" it asserts. *Id.* (internal quotation marks and alterations omitted). This form of jurisdictional preemption is extremely rare; the Supreme Court has only recognized it in three instances. *Id.* at 905. And as particularly relevant here, the only two courts to have considered the question have concluded that the CEA does not have complete preemptive effect— including the Massachusetts case involving Kalshi, which is a state enforcement action just like this one. *See* Mass. Order; *Farmers Co-op Elevator*, 946 F. Supp. at 728–29 & n.4.

As the Court explained, Kalshi fails to meet the first requirement for complete preemption. ECF No. 45, at 7–9. The Court cited the CEA's savings clause, which states that "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of . . . any State." 7 U.S.C. § 2(a)(1)(A). As the Court explained that clause makes clear that "Congress did not express a clear intent to 'completely displace ordinarily applicable state law.' " ECF No. 45, at 8 (quoting *Empire Healthchoice Assur., Inc.*

1  *v. McVeigh*, 547 U.S. 677, 698 (2006)). In the words of the Ninth Circuit, "[w]hen a federal statute has a

2  savings clause . . . , Congress did not intend complete preemption because there would be nothing left to

3  save." *City of Oakland*, 969 F.3d at 908 (internal quotations marks omitted).

4      Kalshi argues (Mot. 9) that the savings clause is limited to specific causes of action authorized by

5  the CEA, but that the CEA otherwise preempts other state-law causes of action. Nothing in the CEA says

6  that. Kalshi cites provisions that authorize particular state-law claims, but they do not say that other

7  claims *may not* be brought in state court. *See* 7 U.S.C. §§ 13a-2(7)–(8), 16(e). Kalshi also argues (Mot.

8  9–10) that the savings clause in the CEA is not like the savings clause at issue in *City of Oakland*. That

9  is incorrect; at their core, both savings clauses save state-law claims. *See City of Oakland*, 969 F.3d at

10 907–08 (citing 42 U.S.C. § 7416). Regardless, the basic point remains that Congress plainly saw a role

11 for state courts in the CEA, and thus the statute cannot be completely preemptive.

12     Kalshi cites (Mot. 10) decisions that, it says, support its view that the CEA does not "permit

13 concurrent state regulation." None of those decisions addresses the complete preemption doctrine.

14 Kalshi's argument, at most, "would establish preemption, not complete preemption." ECF No. 45,. at 7.

15 For complete preemption, Kalshi must also show that the CEA provides a substitute cause of action that

16 would allow the Board to remedy the wrong it asserts. Kalshi does not even try to do that, because no

17 such cause of action exists. Besides, as both Chief Judge Gordon and the state court have found, Kalshi

18 is wrong about the preemptive effect of the CEA. *See Hendrick*, 2025 WL 3286282, at *12; Polymarket

19 TRO 6.

20     Finally, Kalshi (Mot. 11) analogizes the CEA to the Indian Gaming Regulatory Act (IGRA),

21 which the Eighth Circuit held to be completely preemptive in *Gaming Corp. of Am. v. Dorsey & Whitney*,

22 88 F.3d 536, 544–46 (8th Cir. 1996). But Kalshi fails to address the features of the IGRA on which the

23 Eighth Circuit grounded its holding: In the IGRA, "[e]very reference to court action . . . specifies federal

24 court jurisdiction" and "State courts are never mentioned." *Id.* at 545. The CEA is nothing like that; it is

25 rife with references to state courts and state proceedings and even contains a savings clause that preserves

26 state court authority. *Gaming Corp.* provides no support for Kalshi.

27 / / /

28 / / /

Thus, this Court correctly held—like the other two courts to address the issue—that the CEA is not completely preemptive. Kalshi's arguments to the contrary are insubstantial and do not raise a serious question.

### 3. Necessary party

Third, Kalshi argues (Mot. 11) that it has raised a serious legal question with respect to the necessity of joining the CFTC under NRS § 30.130. It has not. This is purely a question of state law—the interpretation of NRS § 30.130. As the Court explained, the Nevada Supreme Court has explained that NRS § 30.130 to require joinder only of those with a "legal interest" in the action—meaning those whose rights, duties, obligations will be adjudicated in the action. ECF No. 45, at 9 (quoting *Wells v. Bank of Am.*, 522 P.2d 1014, 1018 (Nev. 1974)). The Court correctly recognized that the CFTC does not have a legal interest in this case of that type, so it is not a necessary party under state law. *Id.* at 10.

Kalshi suggests (Mot. 11) that the Ninth Circuit might disagree with *Wells*, but *Wells* is binding on the Ninth Circuit as a published precedent of the Nevada Supreme Court on the meaning of a Nevada statute. *See Doe v. Uber Techs., Inc.*, 90 F.4th 946, 949 (9th Cir. 2024). Kalshi also argues (Mot. 12) that *Wells* is distinguishable because it involved different facts. But *Wells* expressly set out the rule for which parties must be joined under NRS § 30.130 for a declaratory action under NRS § 30.030—the precise statute Kalshi invokes here. 522 P.2d at 1017–18.

Finally, Kalshi notes (Mot. 12) that the Board said in its complaint that it has "a strong legal interest in this" case, Compl. ¶ 68, and Kalshi argues that the CFTC has an equivalent interest. But the Board has a legal interest in this case because Nevada statutes expressly confer on the Board the obligation to enforce Nevada gaming law. *See* NRS § 463.130. This case thus involves the Board's legal duties under Nevada law. In contrast, the Board is not seeking to enforce gaming law against the CFTC, and the CFTC does not face any legal exposure from the relief that the Board seeks. ECF No. 45, at 10.

In short, Kalshi's argument is foreclosed by binding Nevada Supreme Court precedent. Kalshi thus does not raise a serious legal question on this point, either.

### C. Kalshi would not be irreparably harmed without a stay

Kalshi argues (Mot. 12–17) that it would face irreparable harm without a stay pending appeal, whereas the Board would not be harmed. That has it exactly backwards: Kalshi has not shown any

irreparable harm, whereas the Board would face substantial and irreparable harm if the Court were to grant a stay pending appeal. Indeed, Judge Gordon already considered and rejected Kalshi's claims of irreparable harm, finding that Kalshi's claimed harms "are largely monetary" ("essentially that it will not be able to profit from [its] trades"), and Kalshi "created or amplified" those harms by "greatly expand[ing]" its business instead of "proceed[ing] cautiously until this and other lawsuits played out." *Hendrick*, 2025 WL 3286282, at *12–13.

Kalshi has no right to continue operating in violation of state law to try to make more profits. All other companies offering lawful sports betting comply with state law, either by becoming licensed or by geofencing their operations to avoid Nevada, and Kalshi can do that too. *Hendrick*, 2025 WL 3286282, at *12. Kalshi just wants to make more money; all of its harms are self-inflicted and therefore are not irreparable. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020). Further, Kalshi cannot claim that a civil enforcement proceeding would cause it irreparable harm, because it can raise any potential defense. *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 203 (D.D.C. 2017). Notably, Kalshi already is subject to a state enforcement action, in Massachusetts.

In order to obtain a preliminary injunction, Kalshi told the district court that its sports bets were extremely limited, to only win/loss contracts. Tr. at 6, No. 25-cv-575 (ECF No. 46). Then as soon as the court granted the preliminary injunction, Kalshi expanded its business so that it now provides all of the offerings of traditional sports books, including prop bets (*e.g.*, bets on the point spread or the number of touchdowns scored) and parlays (*e.g.*, a bet on whether both the Packers and the Seahawks will win on a given weekend). Then, after Chief Judge Gordon dissolved the preliminary injunction, Kalshi launched new series of sports wagers, entered into additional partnerships, and aggressively marketed its platform, leading to record downloads and betting volumes. *See* pp. 4-5, *supra*. Kalshi has no claim to the equities here.

Kashi argues (Mot. 12–13) that it would suffer irreparable injury absent a stay because it would need to litigate the Ninth Circuit appeal of the remand order at the same time as litigating the merits of the Board's enforcement action in state court, as well as litigating its own declaratory judgment action against the Board before Chief Judge Gordon and the Ninth Circuit. But it is well established that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."

*Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 735 n.20 (9th Cir. 2017) (internal quotation marks omitted). And Kalshi brought that on itself—it sued the Board in federal court; it told Chief Judge Gordon that it would never stop its unlawful operations until the Board brought a state enforcement action, and it removed the state enforcement action to this Court. Kalshi cannot complain about the costs of litigation when it has been the driver of the litigation, and its gamesmanship has contributed to briefing in multiple courts and delay.

Notably, there is no risk of inconsistent decisions, because the state court and the Ninth Circuit appeal on the remand motion would be addressing different issues. The state court would be considering the merits of the Board's state-law enforcement action, not the propriety of removal, whereas the reverse would be true of the Ninth Circuit. And Kalshi already has said that the proceedings before Chief Judge Gordon (and the Ninth Circuit appeal of those proceedings) will not affect its operations in Nevada, because it will not stop its unlawful operations until the state courts rule against it. Reply in Supp. of Stay Mot. at 9, No. 25-cv-575 (ECF No. 262).

Kalshi next argues (Mot. 13) that its right to an effective appeal would be mooted if the case proceeds in state court in the meantime. That argument is directly contrary to *Express Scripts*, which makes clear that continuing litigation in state court during the pendency of an appeal of a remand order should be the norm, and does not impose any sort of harm. *See* 139 F.4th at 768–70. The Ninth Circuit explained that a stay of a remand order pending appeal is an "extraordinary remedy" and, given the federalism interests implicated, should be granted sparingly "when the case involves another sovereign" (here, the State of Nevada). *Id.* at 768. The Ninth Circuit further explained that although state and federal courts "may operate in slightly different ways," both provide "forums for litigation with roughly similar levels of efficiency, expense, and comprehensive discovery mechanisms." *Id.* at 770. Thus, having to continue litigation in state court "for a brief period pending appeal" does not "cause defendants to irretrievably lose" anything. *Id.* (internal quotation marks and brackets omitted). Indeed, the Ninth Circuit has recognized that when a State brings an action "in state court to enforce its own state . . . laws," alleging only "state law causes of action, brought to protect Nevada residents," the "balance of federal and state judicial responsibilities" dictates that the action ordinarily should be heard in the state court. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675–76 (9th Cir. 2012). And if the Ninth Circuit ultimately

holds that the case should be in federal court, this Court can recall its remand order and resume jurisdiction over the case post-appeal. *See Acad. of Country Music v. Continental Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021).[3]

Finally, Kalshi argues (Mot. 13) that the state court might adjudicate the Board's enforcement action differently than this Court and thus grant preliminary injunctive relief that this Court would not grant. That is pure speculation. And all of the proceedings to this point suggest the contrary. Chief Judge Gordon already has rejected Kalshi's preemption defense, *Hendrick*, 2025 WL 3286282, at *1, and the two state court judges who have considered the merits of the preemption defense in other cases have agreed, Polymarket TRO 6; Coinbase TRO 5. Kalshi's argument also flies in the face of the Supreme Court precedent, which "presume[s]" that the state courts are "competent to resolve federal issues," *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 150 (1988), and which recognizes States' strong sovereign interest in having the cases they bring heard in their own courts, *Franchise Tax Bd.*, 463 U.S. at 21 n.22. Kalshi's arguments are just another attempt at delay so it can continue its unlicensed operations at the expense of the State and the public.

**D.    The balance of hardships and public interest weigh heavily against a stay pending appeal**

Kalshi asserts (Mot. 16) that staying the remand order would not harm the Board. But Kalshi *admits* that its requested stay would "temporarily halt[] [the Board's] enforcement action." Mot. 16. And Chief Judge Gordon already has concluded that every day Kalshi operates in violation of Nevada law imposes "substantial irreparable harms to the Board, the State of Nevada, the gaming industry in this state, and the public interest." *Hendrick*, 2025 WL 3286282, at *13. He explained that the Board faces "substantial" and "irreparable" harms that "weigh heavily" against Kalshi's asserted harms. *Id.* at *13–14. And he explained that Kalshi's continued operation deprives Nevada of needed revenue, gives Kalshi an unfair advantage over its licensed competitors, and harms the public. *Id.*

The state courts in the actions against Polymarket and Coinbase likewise have determined that

---

[3]    Kalshi argues (Mot. 14–15) that, if the case were to return to this Court post-appeal, it could be difficult for the Court to "retrace and unwind" the state court's orders. Kalshi does not explain why that would impose any sort of difficulty. The state court's orders would remain in effect, unless and until terminated by this Court. *See* 28 U.S.C. § 1450.

the Board suffers immediate and irreparable harm when a prediction markets allows persons within Nevada to wager on sports and other events through event-based contracts in violation of Nevada law. Polymarket TRO 6–7; *see* Coinbase TRO 5–6. As those courts explained, "every day" matters "in a literal sense" in these cases: "A day means more consumers. More consumers mean more transactions. More transactions mean more potential harm." Polymarket TRO 6–7; *see* Coinbase TRO 5–6.

Those decisions are correct. A State "suffers a form of irreparable injury" "[a]ny time" it is "enjoined by a court from effectuating statutes enacted by representatives of its people." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 860–61 (2025)). As the state court recognized, the Board has a statutory obligation to "consistently and equitably" enforce Nevada gaming law to "protect the health, safety, morals, good order, and general welfare of gaming consumers." Polymarket TRO 6; *see Hendrick*, 2025 WL 3286282, at *13 (explaining that the Board has the obligation to enforce Nevada gaming law). Preventing the Board from doing so poses an affront to Nevada's sovereignty and intrudes on the democratic will of the people.

Licensed gaming is "vitally important to the economy of the State and the general welfare of the inhabitants." NRS § 463.0129(1)(a). In 2024, Nevada collected $2 billion in gaming taxes, which fund core public services. Nev. Resort Ass'n, *2025 Nevada Gaming Fact Book* 65 (2025), perma.cc/NRH9-5NGV. Unlicensed gaming threatens that revenue by evading taxes and diverting business from licensed sportsbooks that pay taxes. *See Sacco v. State*, 105 Nev. 844, 847 (1989).

Many provisions of Nevada gaming law protect the public. Only people who are at least 21 years old may gamble. NRS § 463.350(1)(a). Licensees must allow patrons to set betting limits, conspicuously display information about responsible-gaming resources, train employees to identify signs of problem gaming, and refrain from marketing to customers who have excluded themselves. Nev. Gaming Reg. 5.170. Kalshi does not follow any of those requirements. The resulting unlicensed and unregulated gambling means underage people can gamble, allows unsuitable persons to run gaming operations, and distorts the gaming industry. *Hendrick*, 2025 WL 3286282, at *13. These harms cannot be mitigated once incurred.

Nevada has a sovereign interest in ensuring a fair and competitive gaming industry. NRS § 463.0129(1)(b)–(c); *see Sports Form, Inc. v. Leroy's Horse & Sports Place*, 108 Nev. 37, 41 (1992).

Kalshi's failure to comply with Nevada gaming law gives it a massive and unfair competitive advantage over its competitors, which greatly disrupts the gaming industry. That advantage would be both pecuniary, in that Kalshi would not need to spend the money its competitors need to spend on licensing fees, taxes, and compliance (including maintaining a physical location in Nevada), as well as strategic, in that Kalshi would be offering products that are not subject to the same requirements as its competitors. The Board suffers irreparable harm when Kalshi is able to distort the playing field and disrupt the industry in this manner. *Hendrick*, 2025 WL 3286282, at \*13–14; *see Hotel Emps. & Rest. Emps. Int'l Union v. Nev. Gaming Comm'n*, 984 F.2d 1507, 1509 (9th Cir. 1993).

The harm only would increase the longer Kalshi is allowed to operate unfettered. Kalshi's ability to profit from unlicensed gaming will incentivize others to enter into prediction markets instead of becoming (or remaining) licensed by the State. Indeed, that already has started to happen: DraftKings and FanDuel have decided to forgo licensing in Nevada so that they can enter the prediction-markets business in other States. *See Hendrick*, 2025 WL 3286282, at \*14. Other sportsbooks could follow suit, "unleashing even more unregulated gambling." *Id.*

Kalshi contends (Mot. 16) that the Court should disregard Chief Judge Gordon's decision because that case involved only sports and election contracts, whereas (in its view) this case involves all of Kalshi's contracts. But sports comprise over 95% of Kalshi's business. Sam Learner, *Prediction Markets Barely Make Money; Sportsbooks Make Money*, Fin. Times (Dec. 19, 2025), perma.cc/CB9N-SN6P. Virtually all of the harms from its operations are from its sports contracts. Anyway, the Board does not seek to regulate genuine commodity derivatives, such as swaps on interest rates or grain prices. *See* Tr. at 94–95, No. 25-cv-575 (ECF No. 219). The Board seeks only to regulate what it has always regulated—wagers on sports, elections, and entertainment events.

Kalshi next argues (Mot. 16–17) that the *ex parte* nature of the Board's request for a temporary restraining order is a reason to disregard the Board's significant and irreparable harms. To start, the state courts that have issued TROs did so only after considering the defendants' preliminary responses to the Board's applications for a TRO. *See* Polymarket TRO 2; *see* Coinbase TRO 2. And the state courts' conclusion that the Board is irreparably harmed is entirely consistent with Chief Judge Gordon's

/ / /

conclusions. *Hendrick*, 2025 WL 3286282, at \*13. Anyway, the fact that courts have been willing to grant TROs just underscores the obvious harms from unlicensed and unregulated gambling.

Kalshi also contends that (Mot. 16) that the Board could have alleviated its harms by seeking a TRO in this Court. But this Court needed to determine its own jurisdiction before it could enter any relief. That said, if the Court is inclined to grant any sort of stay, the Court *should* enter a TRO against Kalshi. Kalshi also repeats (Mot. 16) its argument that the Board is not harmed because the Board did not immediately appeal Chief Judge Gordon's initial decision, which ignores that Kalshi "greatly expanded" its business only after that decision, *Hendrick*, 2025 WL 3286282, at \*13, and that the Board pursued this state enforcement action as soon as it could after giving the Ninth Circuit time to rule on the pending stay. And Kalshi repeats (Mot. 16) its argument that Board is not harmed because its agreements with Crypto.com and Robinhood do not require those companies to completely stop operating in Nevada. But those companies have sharply curtailed their operations in Nevada, whereas Kalshi adamantly refuses to do *anything* to stop operating.

Finally, Kalshi argues (Mot. 14–15) that the public interest favors a stay because a stay would avoid duplicative litigation. But the litigations are not duplicative. Kalshi expressly told Chief Judge Gordon that the action currently pending before him (and in the Ninth Circuit) will *not* affect Kalshi's operations in Nevada. Reply in Supp. of Stay Mot. at 9, No. 25-cv-575 (ECF No. 262). That is because Kalshi brought that action to seek a declaration that the Board cannot enforce Nevada gaming law against Kalshi; it is not an enforcement action by the Board through which the Board can seek relief against Kalshi. The Board can only obtain relief in *this* action.

\* \* \* \* \*

Every day that Kalshi operates in Nevada without complying with Nevada law causes significant and irreparable harm to the State, its residents, its gaming industry, and its broader economy. Kalshi has done everything it can to avoid being held to account for its illegal conduct. That must end now. There is no justification for allowing Kalshi to continue violating Nevada gaming law with impunity.

/ / /

/ / /

/ / /

**CONCLUSION**

The Court should deny Kalshi's emergency motion for a stay pending appeal.

DATED this 6th day of March, 2026.

                                         AARON D. FORD
                                         Attorney General

                                  By: */s/ Jessica E. Whelan*
                                         Jessica E. Whelan (Bar No. 14781)
                                          Chief Deputy Solicitor General - Litigation
                                         Sabrena K. Clinton (Bar No. 6499)
                                          Senior Deputy Attorney General
                                         John S. Michela (Bar No. 8189)
                                         State of Nevada
                                         Office of the Attorney General
                                         jwhelan@ag.nv.gov
                                         sclinton@ag.nv.gov
                                         jmichela@ag.nv.gov

                                         *Attorneys for Plaintiff*